IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RODNEY MILLER,

          Plaintiff,

vs.                                        No. CIV 04-0970 JB/RHS

MONUMENTAL LIFE INSURANCE
COMPANY and NASRA TPA, INC. and
its successor, HCC ADMINISTRATORS, INC.
and/or GALLAGHER BASSETT SERVICES, INC.,

          Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Summary Judgment, filed April 29, 2005 (Doc. 27); and (ii) Defendant Monumental Life Insurance Company's Motion for Summary Judgment, filed May 6, 2005 (Doc. 29).  The primary issue is whether the Employee Retirement Income Security Act ("ERISA") Plan's policy requirement that a claimant receive a "Social Security Disability Award" includes an award for Supplemental Security Income ("SSI") as well as for Social Security Disability Insured ("SSDI").  Because the Court believes that disability benefits does not include SSI benefits, even when they are based on disability, the Court denies Plaintiff Rodney Miller's motion for summary judgment and grants Monumental's motion.

**<u>FACTUAL BACKGROUND</u>**

The issue raised by both motions is whether Miller is entitled to Continuous Total Disability Benefits under the Policy.  Because the Court, however, does not believe that it needs to decide all issues that Monumental raises to decide both motions, the Court will set forth only the facts and law relevant to the issue whether the phrase "Social Security Disability Award" includes SSI payments.

From the pleadings and responses to discovery, it appears that the parties do not dispute the following facts.

1.      **The Policy.**

Monumental issued a Master Group Policy to Aycock Transportation, Inc. in Texas.  <u>See</u> Monumental Life Insurance Company Master Policy at 1 (executed June 19, 1996)(hereinafter "Policy").  Monumental subsequently issued to Miller a Certificate of Insurance under the Master Group Policy.  The Policy's and the Certificate's terms and conditions are the same.

The Policy requires the Insured Person to receive a "Social Security Disability Award" before he can receive Continuous Total Disability benefits.  Policy at 10.  Specifically, the Policy provides, in pertinent part, that Monumental will pay Continuous Total Disability benefits when it receives, among other things, proof that the Insured is "Totally Disabled," "the Insured Person has been granted a Social Security Disability Award for such disability," and the Total Disability "resulted solely and directly from Injury."  <u>Id.</u>  The Policy further provides that such benefit payments will end if, among other things, "the Insured's Social Security Disability Award ceases."  <u>Id.</u>  The Schedule of Benefits provides that "Continuous Total Disability . . . Benefit will be paid as long as the Insured Person continues to receive a Social Security Disability Award or to age 65."  <u>Id.</u> at 7.

The Policy states that the weekly benefit allowed under the Continuous Total Disability Benefit is calculated by taking "70% of the Insured Person's Average Weekly Earnings, reduced by his primary Social Security Disability Award; or . . . the Maximum Weekly Benefit shown in the Schedule of Benefits, whichever is less."  <u>Id.</u> at 10.  The Schedule of Benefits provides that benefits are reduced "100% of  primary Social Security Disability Award."  <u>Id.</u> at 7.  At the hearing, the parties agreed that, although it is not in the record, Miller would receive $2,000 monthly if he

received the Continuous Total Disability Benefits.  See Transcript of Hearing at 3:22 - 4:7; id. at 10:25 - 11:5 (taken June 30, 2005)(hereinafter "Transcript").[1]  The parties are also in agreement that, by receiving the $2,000 monthly sum under the Policy, Miller's income would be too great to receive SSI payments, which would be reduced to zero.  See id. at 4:20-25; id. at 11:6-9.

The Policy's definition of "Totally Disabled" for purpose of Continuous Total Disability Benefits provides in pertinent part that the Insured Person must have been "granted a Social Security Disability Award."  Policy at 5.  The Policy also contains the following definition:  "Social Security Disability Award: means Social Security disability benefits for which the Insured Person has submitted a claim and been approved for payment by the Social Security Administration."  Id.

**2.     Miller's Award.**

Miller is a New Mexico resident.  Miller was a contract driver leased to the policy holder, Aycock Transportation, insured with Monumental for disability.  See Policy at 1-17; Complaint for ERISA Plan Benefits ¶ 3, at 1 (attached to Notice of Removal, filed August 27, 2004 (Doc. 1))(hereinafter "Complaint").  On September 15, 1997,[2] and while an Aycock employee, Miller was involved in a motor vehicle accident and became disabled.  See Complaint ¶¶ 3, 7, 8, 9, at 2-3; Monumental's Answer ¶ 9, at 2, filed September 3, 2004 (Doc. 6).  At the time of this accident, the Policy was in effect and Miller is an insured under the Plan.

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

[2] In paragraphs 3 and 22, Monumental refers to the date of Miller's accident as September 15, 1977.  See Defendant Monumental Life Insurance Company's Brief in Support of Motion for Summary Judgment ¶¶ 3, 22, at 2, 13.  Based on the record before the Court, however, the Court will assume this is a typographical error and that the actual date of the accident -- September 15, 1997 -- is not in dispute.  See id. ¶ 7, at 3 ("On September 15, 1997, Plaintiff was involved in a motor vehicle accident . . . .").

Miller received twenty-four months of Temporary Total Disability Benefits from September 1997 to September 1999 at $2,000.00 per month, and certain medical benefits were paid on his behalf under the Policy.  See Affidavit of Rodney Miller ¶ 8, at 1 (executed Aril 29, 2005).  The requirements for such benefits are different from those for Continuous Total Disability Benefits.  See Policy at 5.  Miller would not be entitled to SSI benefits until after the expiration of Short Term Disability because of his income.

On December 23, 1998, Miller received a letter from the Plan Administrator that advised, if Miller was to receive Continuous Total Disability Benefits after September 22, 1999, when his Temporary Total Disability ended, he would need to have been granted a Social Security Disability Award.  See Letter from Cheryl Arms to Rodney Miller at 2 (dated December 23, 1998).  Miller applied for a Social Security Disability Award.  The Social Security Administration denied his application because of the lack of all insured status; he had not worked in eighteen quarters in the ten years before the disability onset.  See Decision of Social Security Administrative Law Judge at 3 (dated August 28, 2003).  The Administrative Law Judge ("ALJ") concluded that Miller "is not entitled to a period of disability and disability insurance benefits because of lack of status." Id. at 2, 3.  In so finding, the ALJ noted that Miller, at another hearing, was determined to "not [be] insured for disability insurance benefits[,]" but that the earlier hearing "resulted in a favorable decision with respect to SSI benefits." Id. at 1.  According to the ALJ: "An SSI application is an application for all Social Security benefits for which an individual may be entitled." Id.  After reviewing Miller's alleged basis for asserting insured status, the ALJ concluded that Miller "has not established that he has sufficient quarters of coverage to confer disability insured status and that . . . he is not entitled to a period of disability and disability insurance benefits because of lack of status." Id. at 3.

-4-

Miller, however, also applied for a Supplemental Security Income Award and received a Decision that he had satisfied the disability requirements of his claim for "Supplemental Security Income" benefits and "[t]he component of the Social Security Administration responsible for authorizing [SSI] payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made." Decision of Social Security Administrative Law Judge at 4 (dated March 30, 2001). The award was for the period beginning December 28, 1999. See id. at 4; Complaint ¶ 11, at 2. Miller has supplemented the record to show that the Social Security Administration has awarded him SSI and, at the hearing on these motions, Monument withdrew its argument pertaining to the proof of SSI benefit receipt. See Transcript at 13:4-14.

After receiving his SSI award, Miller made a claim for Continuous Total Disability Benefits under the Policy. See Complaint ¶ 15, at 2. Miller presented the ALJ's decision to the Plan Administrator – Gallagher Bassett Services, Inc. ("GAB"), successor to NASRA TPA, Inc. – and GAB denied benefits on November 19, 2003. See Letter from Madelynn Collins to Rodney Miller at 1 (dated November 19, 2003). GAB denied the claim on the basis that Miller did not qualify, as the Policy required Miller be granted a "social security disability award" and Miller had been granted a "supplemental security income" award. Id.

The Plan Administrator interpreted the policy language, apparently a matter of first impression, with no guidance except the definition. There is no Summary Plan Description to aid the Court in interpreting the phrase. There are no prior interpretations by the Plan Administrator. Moreover, Miller contends that, because there is no Summary Plan Description ("SPD"), Monumental has violated §§ 1021(a) and 1022(b) of Title 29, ERISA.

-5-

On January 9, 2004, Miller, through counsel, asked GAB to reconsider its denial on the basis that SSI was not a social security award as that the Policy used that term.  See Letter from James Rawley to Madelynn Collins at 1 (dated January 9, 2004).  Collins of GAB denied Miller's request to reconsider, notifying him that he was not eligible for Continuous Total Disability under the Policy. See Letter from Madelynn Collins to James Rawley at 1 (dated February 19, 2004).  The sole reason in the record for the Defendants' denial was that his award of SSI was not a "Social Security Disability Award" as the Policy uses that term.  See Letter from Madelynn Collins to James Rawley at 1 (dated February 19, 2004); Letter from James Rawley to Madelynn Collins at 1 (dated January 9, 2004).

## PROCEDURAL BACKGROUND

Miller then filed this suit on July 16, 2004, in the Second Judicial District, Bernalillo County, New Mexico.  See Complaint at 1 (attached to Notice of Removal, filed August 27, 2004 (Doc. 1)).  Miller's action is for group welfare benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1132.  The only claim that Miller asserts is for the breach of contract.

Exchange of discovery has resulted in the Defendants' admission that "the definition for 'total disability' is the same under Title II and Title XVI of the Social Security Act."  Response to Request for Admission No. 3, at 2.  The Defendants also admit that the Monumental Policy does not mention SSI as an exclusion or otherwise.  See Response to Request for Admission No. 4, at 2.  The Defendants further acknowledge that the Plan has no prior record of interpretation of this phrase "Social Security Disability Award" in the context of a claim for Continuous Total Disability under the Policy.  See Response to First Set of Interrogatories No. 4 and No. 9; Response to Request for Production No. 4, at 2.  Moreover, the Claim Processors have no written instructions to guide the

Policy's interpretation.  See Response to Request for Production Nos. 2, 3 at 1-2.  Lastly, Monumental did not produce a copy of the Summary Plan Description and states it has no copy.  See Response to Second Request for Production No. 1, at 1.

Both parties have moved for summary judgment.

## LAW REGARDING CONTRACT CONSTRUCTION

### 1.    Tenth Circuit.

An insurance policy is ambiguous where it is "reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of a term." Pirkheim v. Firstunum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000)(citing Stewart v. Adolph Coors Co., 217 F.3d 1285, 1290 (10th Cir. 2000)).  In the case where a court finds ambiguity, the court must interpret the policy language to protect the insured's and intended beneficiaries' reasonable expectations. See id. at 1011. Under the doctrine of reasonable expectations, an insurer that wishes to avoid liability must use clear and unequivocal language evidencing its intent to do so.  See id.

### 2.    New Mexico Contract Law.

Under New Mexico state law, "the obligation of a liability insur[e]r is contractual and is to be determined by the terms of the policy." Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir. 1980). See Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992); Safeco Ins. Co. of Am., Inc. v. McKenna, 90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977).  If a policy is clear and unambiguous, then the court does not construe the terms; it merely gives the terms their usual and ordinary meaning. See W. Commerce Bank v. Reliance Ins. Co., 105 N.M. 346, 348, 732 P.2d 873, 875 (1987); Ivy Nelson Grain Co. v. Commercial Union Ins. Co., 80 N.M. 224, 226, 453 P.2d 587, 588 (1969).  Whether an insurance contract is ambiguous is a question

of law for the court to determine.  See Benns v. Cont'l Cas. Co., 982 F.2d 461, 462 (10th Cir. 1993);

Richardson v. Farmers Ins. Co. of Ariz., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991).

     New Mexico courts will not strain the policy's words to encompass meanings they do not

clearly express.  See Gonzales v. Allstate Ins. Co., 122 N.M. 137, 140-41, 921 P.2d 944, 947-48

(1996); Gamboa v. Allstate Ins. Co., 104 N.M. 756, 759, 726 P.2d 1386, 1389 (1986).  The court

is bound to enforce the policy's terms as written.  See Sanchez v. Herrera, 109 N.M. 155, 159, 783

P.2d 465, 469 (1989).  The court will not make an insurance contract for the parties, but will enforce

only the parties' intent as the writing manifests that intent.  See Horn v. Lawyers Title Ins. Corp., 89

N.M. 709, 711, 557 P.2d 206, 208 (1976).

     When the insurance policy does not define a word, the court must interpret the word in its

usual, ordinary, and popular sense.  See Estate of Galloway v. Guar. Income Life Ins. Co., 104 N.M.

627, 628, 725 P.2d 827, 828 (1986).  "In the absence of ambiguity, a court must interpret and enforce

the clear language of the contract and cannot make a new agreement for the parties."  Nearburg v.

Yates Petroleum Corp., 123 N.M. 526, 535, 943 P.2d 560, 569 (1997).  New Mexico courts "cannot

rewrite the contract of the parties to mean something it does not say."  Alvarez v. Southwestern Life

Ins. Co., Inc., 86 N.M. 300, 303, 523 P.2d 544, 547 (1974); Vargas v. Pac. Nat'l Life Assurance Co.,

79 N.M.152, 156, 441 P.2d 50, 54 (1968).

**3.    Texas Contract Law.**

     Under Texas law, the same rules that govern the construction of other contracts govern the

construction of insurance contracts.  See Am. Mfrs. Mut.  Ins. Co. v. Schaefer, 124 S.W.3d 154, 157

(Tex. 2003); Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 665 (Tex. 1987).  If the contract is

unambiguous, the court will not apply any rules of construction favoring the insured.  See id. at 665.

Whether a policy provision is ambiguous is a question of law for the court to decide.  See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).

"Not every difference in interpretation of an insurance policy amounts to an ambiguity.  Both the insured and insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity." Maryland Cas. Co. v. Tex. Commerce, 878 F. Supp. 939, 941 (N.D. Tex. 1995)(citing Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994).  See Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997).

The court must "construe the policy to give effect to each term in the contract and to avoid rendering any term a nullity." Lynch Prop. v. Potomac Ins. Co., 140 F.3d 622, 626 (5th Cir. 1998). The court's primary task is to give effect to the parties' intent as the policy's plain language expresses that intent.  See Forbau v. Aetna Life Ins. Co., 876 S.W.2d at 133.  The "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." Breitenfeld v. SAS Inst., Inc., 147 S.W.3d 672, 677 (Tex. App. 2004); Parts Indus. Corp. v. A.V.A. Servs., Inc., 104 S.W.3d 671, 678 (Tex. App. 2003).

Moreover, a court will not change the contract because it or one of the parties comes to dislike its provisions or thinks that something else is needed. See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 888-89 (Tex. 1998); Natural Gas Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400, 407 (Tex. App. 2003).  The court will not "ask about the subjective intent of the parties to the contract." Vincent v. Bank of Am., N.A., 109 S.W.3d 856, 867 (Tex. App. 2003).  "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." Coker v. Coker, 650

S.W.2d 391, 393 (Tex. 1983). The court can "neither rewrite the parties' contract nor add to its language." Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d at 162. Rather, the court must enforce the parties' agreement as written. See id.; Royal Indem. Co. v. Marshall, 388 S.W. 2d 176, 181 (Tex. 1965).

## BURDEN OF PROOF ON COVERAGE

To recover on an insurance policy, a plaintiff must prove that the policy covers their loss. See Harken Exploration Co. v. Sphere Drake Ins., 261 F.3d 466, 471 (5th Cir. 2001); W. Alliance Ins. Co. v. N. Ins. Co., 176 F.3d 825, 831 (5th Cir. 1999); Guar. Nat'l Ins. v. Vic Mfg., 143 F.3d 192, 193 (5th Cir. 1998); Data Specialities, Inc. v. Transcon. Ins. Co., 125 F.3d 909, 911 (5th Cir. 1997); Leafland Group-II, Montgomery Towers Ltd. P'ship v. Ins. Co. of N. Am., 118 N.M. 281, 284, 881 P.2d 26, 29 (1994); Employers Cas. Co. v. Block, 744 S.W.2d 940, 944 (Tex. 1988); Royal Indem. Co. v. Marshall, 388 S.W.2d at 181; Bethea v. Nat'l Cas. Co., 307 S.W.2d 323, 324 (Tex. App. 1957). An insured cannot recover an insurance policy unless the plaintiff pleads and proves facts showing coverage under the insurance policy. See Employers Cas, Co. v. Block, 744 S.W.2d at 944.

## ERISA LAW

**1.     Ambiguity.**

In Chiles v. Ceridia Corp., 95 F.3d 1505 (10th Cir. 1996), the United States Court of Appeals stated that, "in interpreting the terms of an ERISA plan we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law." Id. at 1511.

**2.     Summary Plan Description.**

In Hein v. TechAmerica Group, Inc., 17 F.3d 1278 (10th Cir. 1994), the Tenth Circuit confronted the issue of the effect of failure to comply with ERISA requirements, including disclosure

in the SPD.  The Tenth Circuit held the plan in that case was clear that no benefits were due, and so

was unimpressed with the disclosure omissions.  In Chiles v. Ceridia Corp., 95 F.3d 1505 (10th Cir.

1996), the Tenth Circuit stated: "An SPD is intended to be a document easily interpreted by a layman

. . . ."  Id. at 1517-18.  The Tenth Circuit stated that ERISA requires the employer's SPD to inform

the employee of the intent to determine benefits in such a manner as it did, see id. at 1518, "clearly

identifying circumstances which may result in disqualification, ineligibility, or denial."  29 C.F.R. §

2520.102-3(l).

## LAW REGARDING SSI AND SSD

In Bowen v. Galbreath, 485 U.S. 74 (1988), the Supreme Court of the United States

addressed the difference between Social Security Disability Insured ("SSDI") awards under Title II

and Supplemental Security Income ("SSI") awards under Title XVI in connection with the district

court's award of attorneys' fees to the claimants' attorney out of each sward.  The Supreme Court

began its opinion with a discussion of the two awards:

> Title II is an insurance program. Enacted in 1935, it provides old-age, survivor, and
> disability benefits to insured individuals irrespective of financial need.  See 42 U.S.C.
> §§ 403, 423 (1982 ed. and Supp. III).  Title XVI is a welfare program.  Enacted in
> 1972, it provides SSI benefits to financially needy individuals who are aged, blind, or
> disabled regardless of their insured status.  See 42 U.S.C. § 1382(a) (1982 ed. and
> Supp. III).

485 U.S. at 75.

In Burns v. Edwards, 367 N.J. Super. 29, 842 A.2d 186 (App. Div. 2004), the Superior Court

of New Jersey addressed the difference between SSD and SSI awards.  The court stated that "SSD

payments are for the purpose of replacing income lost because of the employee's inability to work

upon becoming disabled."  842 A.2d at 191.

> Unlike SSD payments, SSI benefits are not a substitute for lost income due to disability; rather, they are a supplement to the recipient's income. The purpose of SSI benefits is to assure that the income of a recipient is maintained at a level viewed by Congress as the minimum necessary for subsistence.

842 A.2d at 191 (citing Schweiker v. Wilson, 450 U.S. 221, 223 (1981); Davis v. Office of Child Support Enforcement, 341 Ark. 349, 20 S.W.3d 273, 277 (2000); In re Marriage of Benson, 495 N.W.2d 777, 781 (Iowa Ct. App. 1992)).

The SSI's primary purpose is to assure a minimum monthly level of income to individuals who are blind, aged, or disabled, and whose income and monthly resources fall below the levels set forth in 42 U.S.C. § 1382(a). Under the SSI program, eligible beneficiaries receive monthly benefits at a level that Congress sets. See 42 U.S.C. § 1382(b). These benefits, however, are reduced by countable income received from other sources. See Doyle v. Shalala, 62 F.3d 740, 742 (5th Cir. 1995).

## ANALYSIS

An insured cannot recover under an insurance policy unless the insured pleads and proves coverage for his claim under the insurance policy. See Harken Exploration Co. v. Sphere Drake Ins., 261 F.3d at 471; W. Alliance Ins. Co. v. N. Ins. Co., 176 F.3d at 831; Guar. Nat'l Ins. v. Vic Mfg., 143 F.3d at 193; Data Specialities, Inc. v. Transcon. Ins. Co., 125 F.3d at 911; Leafland Group-II, Montgomery Towers Ltd. P'ship v. Ins. Co. of N. Am., 118 N.M. at 284, 881 P.2d at 29; Employers Cas. Co. v. Block, 744 S.W.2d at 944; Royal Indem. Co. v. Marshall, 388 S.W.2d at 181; Bethea v. Nat'l Cas. Co., 307 S.W.2d at 324. Miller contends the policy is clear that an award of social security for disability under either SSI or SSDI is covered and that no exclusion of SSI is made nor intended. Alternatively, Miller contends that the language is ambiguous and is reasonably construed to include

coverage for this worker who qualified for a Social Security disability award only under the SSI program. Miller has not, with these arguments, met his burden.

**I.     THERE IS NO MATERIAL DISTINCTION BETWEEN THE LAWS OF NEW MEXICO AND THE LAWS OF TEXAS ON THE ISSUES OF CONTRACT INTERPRETATION.**

A dispute exists which state's laws apply.   Miller contends New Mexico law applies. Monumental asserts Texas law applies, because the Master Group Policy was issued and delivered in Texas to a Texas corporation, Aycock Transportation, Inc.  Miller agrees, however, that Texas is likely the proper choice of law because the contract of insurance was made and delivered in Texas.

Nevertheless, there is little difference between New Mexico law and Texas law in how those states construe insurance contracts.  Nor is there much for the law of either state to add to the argument of each party that the contract's plain meaning supports its position.

**II.    THESE MOTIONS REQUIRE THE APPLICATION OF ESTABLISHED LAW TO UNDISPUTED FACTS.**

Both parties agree that one of the issues is whether the Social Security Administration's Decision on Miller's Application for Supplemental Security Income is a "Social Security Disability Award," which is one of the requirements for Continuous Total Disability Benefits under the Certificate of Insurance issued to Miller under the Group Policy issued to Aycock.  <u>See</u> Policy at 10. Review of the Policy does not reveal a specific grant of discretionary authority in deciding whether to deny benefits.  As such, the standard of review is de novo.  <u>See</u> <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 114-15 (1989).  Accordingly, the Court is in as good a position to interpret the Policy.

-13-

**A.    THE POLICY IS NOT AMBIGUOUS.**

The parties have not presented any court decisions interpreting the Policy's language.  Thus, the Court must look to the Policy in deciding the meaning of the phrase.  Both parties contend that the Policy's language is unambiguous if the Court adopts his or its construction.  While the Court cannot adopt both parties' construction, the Court agrees that the Policy's language is unambiguous. The parties do not establish an ambiguity simply because they disagree on the proper interpretation. See Maryland Cas. Co. v. Tex. Commerce, 878 F. Supp. at 941; Forbau v. Aetna Life Ins. Co., 876 S.W.2d at 134; Trujillo v. CS Cattle Co., 109 N.M. at 709, 790 P.2d at 506.  At the hearing, the parties conceded that, if the Court were to find that the Policy's language is ambiguous and the case proceeded to a bench trial, there is no additional evidence the parties would present to the Court in support of their positions.  See Transcript 7:2-6; id. at 15:6-11.  The parties' interest is to receive a ruling on the meaning of the Policy's language.  See id. at 7:14-16; id. at 15:14-18.  The Court will therefore decide this issue as a matter of law.

The Court must construe the phrase "Social Security Disability Award" with the entirety of the Policy and as written.  Miller does not dispute that there is a difference and distinction between an SSDI award and an SSI award.  The statutes and case law distinguish and differentiate between the two awards under the Social Security Act.

A court should not construe a contract to mean something that it does not say.  See Alvarez v. Southwestern Life Ins. Co., Inc., 86 N.M. at 303, 523 P.2d at 547; Vargas v. Pac. Nat'l Life Assurance Co., 79 N.M. at 156, 441 P.2d at 54; Coker v. Coker, 650 S.W.2d at 393.  To sustain Miller's position, the Court would have to construe "Social Security Disability Award" to include SSI benefits.  That would be rewrite the Policy to substitute "a Social Security Disability Award or

Supplemental Security Income Award:" for the language -- "a Social Security Disability Award" -- to which the parties agreed and which they included in the policy. The rules of construction do not allow a court to pervert the words or to exercise "inventive powers" to create an ambiguity where none exists or to make a new contract when the terms express with sufficient clearness the parties' intent. See Am. Intern. Speciality Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 262 (5th Cir. 2003). The court will not rewrite a contract to create an agreement for one of the parties' benefit that, in hindsight, would have been wiser. See Watson Truck & Supply Co., Inc. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990); Smith v. Price's Creameries, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982).

   If Monumental had merely used the phrase "Social Security Disability Award," the Court believes its decision would be relatively straightforward. That phrase has a technical meaning that does not include SSI payments. Regardless of the basis for the SSI award that Miller received, an SSI award is not a "Social Security Disability Award." If Monumental had not included a definition section, there would be no reason to believe that Monumental did not intend the phrase in its technical sense under the caselaw and statutes.

   Not content with that background, however, Monumental decided to interpret the phrase "Social Security Disability Award." The Policy contains its definition of the phrase. The issue is thus, more precisely, whether the phrase "disability benefits" include SSI benefits.

   For the same reasons that the Court believes the phrase "Social Security Disability Award," alone, does not include SSI payments, the Court also concludes that SSI benefits are not disability benefits. SSI benefits are supplemental income, which can be paid for a number of reasons that people lose income, only one of which is disability. SSI benefits are available under Title XVI, which

-15-

is a welfare program enacted to provide benefits to financially needy individuals who are aged, blind, or disabled, regardless of their insured status.  SSDI benefits, on the other hand, are awarded under Title II, which is an "insurance program" that Congress enacted to provide old-age, survivor, and disability benefits to insured individuals irrespective of financial need.  See Bowen v. Galbreath, 485 U.S. at 75.  For the Court to interpret SSI payments as "disability benefits" would be to stretch the phrase further than it has heretofore gone.

Accordingly, the Court need not go further than to look at the policy to read the words "Social Security Disability Award" with its definition.  The Court will interpret that phrase as an award of Social Security benefits for disability under the Social Security Act.  Because SSI benefits are not disability benefits, but are instead welfare benefits, the Court will not construe the phrase "Social Security Disability Award" to include SSI benefits.

The Court believes that this interpretation is consistent with the parties' intentions.  While the Court is not and should not ignore the definition of "Social Security Disability Award," the Court also cannot ignore the Policy's plain language in the six different places that Monumental uses the phrase.  Rather, the Court is holding that the language in each of these places means what Monumental meant it to say when it wrote definition.

The Policy and its plain meaning support the Court's interpretation.  The Court must enforce the Policy's language as written and should not rewrite the Policy or strain the words to encompass meanings they do not clearly express.  To sustain Miller's interpretation, the Court would have to go beyond the technical meaning of Social Security Disability Award to include SSI payments or rewrite the Policy in at least four places.  Unless Social Security Disability Awards includes SSI payments, the Court would have to add language to wording chosen by the parties in the phrase "Social Security

Disability Award" so the phrase would provide "a Social Security Disability Award or Supplemental Security Income Award."   Whether Texas or New Mexico law applies, neither allows a court to rewrite the parties' agreement or to add, subtract, or ignore the plain language chosen and used by the parties in their contract.

The Policy's language and requirement is clear, unambiguous, and direct.  To be entitled to Continuous Total Disability Benefits under the Certificate, Miller must have been granted and must continue to receive a "Social Security disability benefit."   Miller received a welfare benefit, not a disability benefit.

**B.      THE ABSENCE OF AN SPD DOES NOT CHANGE THE RESULT.**

Section 502(c)(1), 29 U.S.C. § 1132(c)(1), requires Miller to make a request for an SPD before liability may be imposed, and there is no evidence that Miller made such a request to the Plan. See Bannistor v. Ullman, 287 F.3d 394, 407 (5th Cir. 2002)(holding that ERISA requires that an SPD be requested in writing before a plan or its administrator can be subject to the statutory penalty for nondisclosure).   Any such failure may be a claim against the ERISA Plan or Aycock,[3] not Monumental.  Furthermore, such alleged ERISA violation has no effect on the Court's construction of the Policy's clear, plain, and unambiguous language.   The cases do not provide that a failure to provide a SPD means the Court should disregard the terms of the Policy and rewrite or add words to the Policy.  The Policy's clear and unambiguous terms require, among other things, that Miller be granted a Social Security Disability Award.  Whether the Plan provided Miller with a SPD does not

---

[3] Moreover, at the hearing, Monumental represented it issued Miller a Certificate of Insurance. See Transcript at 29:24 - 30:3.  Monumental averred that, in certain instances, a certificate has been sufficient to satisfy the SPD requirement, but did not offer any authority to support this position. Nevertheless, as concluded above, not issuing a SPD does not alter the Court's task of analyzing the Policy's language.

alter or change such language or the construction of the language.

### C.   MILLER'S INTERPRETATION WOULD NOT LEAD TO REASONABLE RESULTS.

Under the statutes regulating entitlement to SSI benefits or to an SSI award, the claimant's right to continue to receive his SSI award is adversely effected by the claimant's receipt of "non-excludable" or "countable" income, including sums under a disability insurance policy.  See Doyle v. Shalala, 62 F.3d at 742; White v. Bowen, 835 F.2d 974, 975-76 (2d Cir. 1987)("SSI payments are reduced or eliminated entirely because . . . [disability insurance] benefits constitute countable income under the SSI program."); 42 U.S.C. § 1382.  "Income" is defined "as anything that a recipient receives in cash or in-kind that can be used to meet the recipient's needs for food, clothing and shelter." 20 C.F.R. § 416.1102.  On the other hand, the claimant's receipt of sums under a disability insurance policy does not affect a SSDI award.

Thus, if, as Miller suggests, he is entitled to Continuous Total Disability Benefits under the Policy because of his SSI award, then such benefit would be reduced 100% by his SSI award and, as a result of any such payment of Continuous Total Disability, his SSI Award would cease.  Once the SSI award ceases, Miller would lose entitlement to Continuous Total Disability Benefits as those benefits end when his "Social Security Disability Award ceases."  Policy at 10.  Miller's construction is unreasonable and leads to an absurd and unintended result.

Miller suggests that his SSI award does not "cease" when his benefits are suspended because of receipt of income from this policy; rather, he contends that they are "suspended" because of income eligibility strictures.  Miller argues that the determination of SSI, that he is totally disabled, would remain; only the income eligibility would be affected.  Miller contends the policy requirement

of an award of Social Security for disability is to assure that the person is totally disabled, not to ensure some set off for the policy. Miller points out that there is no amount of SSD specified in the policy, and thus the actual receipt of SSD funds is not a material factor in the policyholder's receipt of disability benefits.

With this argument, however, Miller is essentially contending that the "Decision" is all he needs to become and remain entitled to the Policy's Continuous Total Disability Benefits. Under his construction of the Policy, Miller need not actually ever receive or continue to receive SSI benefits; all that needs to occur is that the Social Security Administration found him to meet the "disability" component of the SSI program. This finding is, under Miller's construction of the Policy, equivalent to having "received a Social Security disability benefit" and, until the SSA finds differently, is the equivalent of him having continued to receive a Social Security Disability Award.

The unreasonableness of Miller's position is that, even if he never actually received an SSI award, or if he received an award for one month and then payments ceased, he would, under his construction of the Policy, still be entitled to receive and to continue to receive Continuous Total Disability Benefits under the Policy. If Miller did not meet the other components of the SSI program and never received an SSI award, then the SSA would have no reason to again address the disability issue. If Miller initially met the other component of the SSI program, but later became ineligible under this other component of the SSI program, then the SSA would have no reason to address the disability issue, as his SSI award ceased and he would no longer be receiving funds from the SSA.

This situation is not what the parties intended with the Policy requirement that the Continuous Total Disability Benefits be paid "as long as [Miller] continues to receive a Social Security Disability Award." Policy, Schedule of Benefits at 7. The requirement that the Continuous Total Disability

-19-

Benefits would end if Miller's "Social Security Disability Award ceases" also does not support Miller's interpretation. Regardless what Social Security Disability Award means, the Policy requires, among other things, a Social Security Disability Award to entitle Miller to Continuous Total Disability Benefits, that such benefits would be paid as long as Miller continued to receive a Social Security Disability Award, and would end when his "Social Security Disability Award ceases."

Because the Court determines that Miller has not met a condition precedent to payment, it need not decide whether the other grounds that Monumental advances also preclude payment. Monumental does not owe any Continuous Total Disability Benefits under the Policy. Accordingly, Monumental is entitled to judgment as a matter of law on Miller's claims, in this lawsuit and under the Policy.

**IT IS ORDERED** that Defendant Monumental Life Insurance Company's Motion for Summary Judgment is granted and the Plaintiff's Motion for Summary Judgment is denied. Final summary judgment is entered on the Plaintiff's claims.

_____

UNITED STATES DISTRICT JUDGE

-20-

*Counsel:*

James Rawley
Albuquerque, New Mexico

> *Attorney for the Plaintiff*

Bruce S. McDonald
Lucinda R. Siembieda
Law Office of Bruce S. McDonald
Albuquerque, New Mexico

*-- and --*

Bernie E. Hauder
Adkerson & Hauder
Dallas, Texas

> *Attorneys for Defendant Monumental Life Insurance Company*