## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RODNEY MILLER,

       Plaintiff,

vs.                                                                 No. CIV 04-0970 JB/RHS

MONUMENTAL LIFE INSURANCE COMPANY,
and NASRA TPA, INC. and its successor, HCC
ADMINISTRATORS, INC. and/or GALLAGHER
BASSETT SERVICES, INC.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Monumental Life Insurance Company's Supplemental Brief on Sole Cause Issue, filed December 17, 2007 (Doc. 50)("Brief"); (ii) Plaintiff Rodney Miller's Supplemental Memorandum of Law in Support of Motion for Summary Judgment, filed January 7, 2008 (Doc. 52)("Memo."); (iii) Monumental Life Insurance Company's Reply and Motion to Strike Plaintiff's Supplemental Brief, filed January 11, 2008 (Doc. 54)("Reply"); and (iv) Plaintiff Rodney Miller's Response to Monumental's Motion to Strike, filed January 25, 2008 (Doc. 56)("Response").  The Court held a hearing on February 8, 2008.  The primary issues are: (i) whether the Court should find that the accident in question in this case was the sole-cause of Plaintiff Rodney Miller's disability; (ii) whether the Court should strike portions of Miller's brief in which he requests attorney's fees; (iii) whether, if the Court declines to strike the request for attorney's fees, the Court should award Miller attorney's fees; and (iv) whether the Court should remand the case to the administrator so that a record can be developed on the sole cause issue. While the Court finds that the language in the Policy regarding "sole" and "direct" cause is

unambiguous, and imposes the requirements that the disability resulted directly from the work injury and not from any other source, the Court does not believe the record is sufficiently developed for the Court to make a fair determination on the sole-cause issue. The Court will therefore remand the case to the Plan Administrator. The Court will also decline to strike Miller's request for attorney's fees and will not grant attorney's fees at this time.

## FACTUAL BACKGROUND

The facts underlying this lawsuit are largely laid out in the Court's Memorandum Opinion and Order, entered June 30, 2005 (Doc. 42)("June 2005 MOO"). In September 1997, Miller was injured in a motor vehicle accident. The primary determination the Court must make at this time is whether the injuries from the accident were the sole cause of Miller's disability. The Court will therefore focus on the facts that pertain to that issue.

### 1.    **The Policy.**

Miller's employer, Aycock Transportation, established a  Plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA"). <u>See</u> Brief at 1. Monumental Life Insurance Company issued a Master Group Policy to Aycock Transportation, and a Certificate of Insurance under the Master Group Policy to Miller, that provided certain medical, Temporary Total Disability, and Continuous Total Disability ("CTD") benefits. <u>See</u> Reply at 1. The Policy provides that Monumental Life will pay CTD Benefits when: (i) it receives proof that the Insured is Totally Disabled; (ii) the Insured Person has been granted a Social Security Disability ("SSD") Award for such disability; and (iii) the Total Disability "resulted solely and directly from Injury." Master Policy at 10, filed April 29, 2005 (Doc. 28)("Policy"). The Policy defines Total Disability for purposes of the CTD to mean that "the Insured Person is unable to perform every duty pertaining to any occupation for which he is or may become qualified by education, training or experience and

has been granted a Social Security Disability Award."  Id. at 5.  The insurance is no longer offered.  See Reply at 8.  Thus, the Policy states that Monumental Life would pay monthly CTD Benefits if the Total Disability "resulted solely and directly from Injury."  Policy at 10.  The primary issue in the briefing at this point is whether the Total Disability "resulted solely and directly from the Injury."

It is undisputed that the Plan gave the administrator no discretion and that the Court's review of the denial of benefits is de novo.  See Brief at 2.  The Court recognized these principles in its order granting Monumental Life's motion for summary judgment, see June 2005 MOO at 13, and the United States Court of Appeals for the Tenth Circuit also recognized these principles in its opinion, see Miller v. Monumental Life Ins., 502 F.3d 1245, 1250 (10th Cir. 2007).

Aycock Transportation was the ERISA plan sponsor, and ERISA required Aycock Transportation, Monumental Life, HCC, or any other entity, to provide Miller with a summary plan description.  Miller states that he was not provided with a "summary plan description."  Reply at 2 & n.1.  There is also no evidence whether Aycock Transportation provided a "summary plan description."  Id.

### 2.    Miller's Pre-Accident Condition.

Miller had some medical conditions that pre-dated the work injury.  See Memo. at 13.  There is also no evidence in the record when the other conditions arose.  See Reply at 2.  Nevertheless, those conditions did not prevent him from working as a truck driver.  See Memo. at 13.  It is undisputed that Miller was physically able to work before the accident of September 15, 1997, and was working as a truck driver.  See Memo. at 2.  Miller was able to perform all the truck-driving duties that his employer required before the accident.  See id.

It is also undisputed that, on September 15, 1997, while employed by Aycock Transportation

and while in the course and scope of his employment with Aycock Transportation, Miller was involved and injured in a motor vehicle accident.  See id.  The accident caused a back injury.  See Memo. at 10.  Miller contends that it is further undisputed that, since the motor vehicle accident, Miller became and has been totally disabled, and unable to work and to continue employment.  See Memo. at 2.  Miller contends that Monumental Life "concedes [he] is totally disabled."  Memo. at 2.  Monumental Life contends that it has not conceded or admitted that Miller is totally disabled.  See Reply at 1.

Miller admits that he became disabled "due to the combined effects of chronic back pain associated with facet arthropathy with cervical and lumbar radiculopathy, carpal tunnel syndrome, bi-polar affective disorder and valvular heart disease with valve replacement."  Defendants' Notice of Removal, Complaint for ERISA Plan Benefits ¶ 8, at 6, filed August 27, 2004 (Doc. 1)("Complaint").

### 3. **The SSA's Findings.**

Miller applied for SSD and for Supplemental Security Income ("SSI") benefits.  See Brief at 2.  The Social Security Administration ("SSA") denied Miller's request for SSD benefits, but found that he met the requirements for SSI benefits, found that he was entitled to those benefits up through at least June 1, 2005, and approved his request for SSI benefits.  See Exhibit 5 to Motion for Summary Judgment, Notice of Decision – Favorable at 1, dated March 1, 2001 ("SSI Decision")(granting SSI benefits); Exhibit 4 to Motion for Summary Judgment, Notice of Decision – Unfavorable at 1, dated August 28, 2003 (denying Miller SSD benefits).  The SSA paid Miller a "Supplemental Security Income Award."  SSI Decision at 1.

In the decision on Miller's request for SSI benefits, the SSA framed the general issue the Administrative Law Judge ("ALJ") was to determine as:

> [W]hether the claimant is disabled under Section 1414(a)(3)(A) of the Social
> Security Act.  The specific issue is whether he is under a disability, which is defined
> as the inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment that can be expected to result
> in death or that has lasted or can be expected to last for a continuous period of not
> less than 12 months.

SSI Decision at 1.  The ALJ determined that "the medical evidence establishes that claimant has the

following severe impairments: chronic neck and back pain associated with facet arthropathy with

cervical and lumbar radiculopathy, carpel tunnel syndrome, bipolar affective disorder and valvular

heart disease with valve replacement."  SSI Decision at 3.  Although the ALJ found that none of

these impairments met the criteria of any listed impairment, the ALJ concluded that, because Miller

was unable to perform the physical and mental requirements of any past relevant work, because

Miller had no transferrable skills to work he could perform, and because Miller could not make an

adjustment to any work that exists in significant numbers in the national economy, Miller was

disabled within the framework of medical-vocational rule 201.00(h).  SSI Decision at 3.  The ALJ

also found that Miller was under a disability, as defined in the Social Security Act, which continued

for a sufficient period of time to qualify for the SSI benefit.  See id. at 4.  Accordingly, Miller

received a monthly SSI Award from May 1, 2001 through June 1, 2005.  See Brief at 2.

**4.    The Administrative Record.**

Miller submitted a claim for CTD benefits under the Policy.  See Brief at 2.  It is undisputed

that Miller's claim was the first and only claim the Plan Administrator or Monumental Life ever

faced where an insured received an SSI Award and sought Continuous Disability Benefits ("CDB")

under the policy.  See Reply at 8.  Monumental Life was not the Plan Administrator or third-party

administrator.  See Reply at 4 n.2.  Monumental Life did not administer or make the decisions on

Miller's claim for benefits under the Policy.  See id.

In the letter setting forth her decision to deny Miller CTD benefits, the Plan Administrator did not mention sole cause, and she gave no inclination regarding whether Miller was Totally Disabled, as defined in the Policy.  See Letter from Madelynn Collins to Rodney Miller at 1, dated November 19, 2003 ("Plan Administrator's Letter").  In its entirety, the body of the letter states:

> Based on a review of your policy terms it does not appear that you are eligible for continuous total disability.
>
> According to the terms of the policy in order to be eligible for continuous total disability you must be unable to engage in any gainful employment for which you can be reasonably trained for [sic].
>
> You must be awarded a social security disability award for injuries sustained from this accident of 9-15-97.  The information you have provided to us from the social security office is for supplemental security income and not a social security disability award.  Therefore, no benefits are available.

Plan Administrator's Letter at 1.  Thus, the Plan Administrator denied the claim on one basis: that Miller did not receive a social security disability award.  See id.

Monumental Life contends that Miller admits the administrative record included the SSA decision on Miller's request for SSD and SSI benefits.  See Reply at 2.  When the Plan Administrator denied Miller's claim, she was in possession of the entire decision of the Social Security ALJ regarding Miller's Social Security Disability Award.  See Memo. at 6.  The evidence presented to and before the Plan Administrator included Miller's medical records, and the findings of the SSA as set forth in its decisions on Miller's request for SSD and SSI benefits.  See Brief at 2.  The Policy was also before the Plan Administrator.  See Brief at 2.  Miller never alleged, and presented no evidence, that he was Totally Disabled, as defined in the Policy, or that any such Total Disability "resulted solely and directly from Injury."  Reply at 2.

Miller asserts that Monumental Life did not argue that Miller's Total Disability did not result solely and directly from the injury at the administrative level.  See Memo. at 4.  Miller argues that

the first time that Monumental Life raised this issue was in its initial motion for summary judgment. See id.

Miller contends that, after he applied for CTD benefits, Monumental Life denied his claim based on its position that Miller did not receive a "Social Security Disability Award."   Memo. at 5. As Miller had not, in the opinion of the Plan Administrator, received a "Social Security Disability Award," as the Policy ostensibly states, and as the Plan Administrator read the Policy to require, the Plan Administrator denied Miller's claim for CTD benefits, finding that Miller had not received a SSD Award.  See Brief at 2.  Miller contends that it is without dispute that Monumental Life at no time based its decision to deny Miller CDB based on the Policy exclusion that a total disability "resulted solely and directly from the Injury."   Memo. at 5.  Miller argues that  the decision to deny Miller benefits was based on what was an erroneous application of the term "Social Security Disability Award."   Id.   Miller asserts that the Plan Administrator based the denial solely on her contention that what Miller presented to her was not a Social Security Disability Award.  See id. In its Supplemental Brief on the Sole Cause issue, in the section headed "Summary of Facts," Monumental Life admits that the only reason that Miller was denied CDB was that Miller had not received a "Social Security Disability Award."   Brief at 2 ("As Miller had not received a 'Social Security Disability Award' as the Policy states and as the Plan [A]dministrator read the Policy to require, the Plan [A]dministrator denied Miller's claim for CTD benefits finding Miller had not received a Social Security Disability Award.").  Thus, it is undisputed that the denial was based on its Plan Administrator's position that Miller did not receive a "Social Security Disability Award." As the Tenth Circuit made clear in its decision, as a matter of law, Monumental Life's denial on this basis was erroneous.  See Miller v. Monumental Life Ins., 502 F.3d at 1252.

-7-

5.     **The Plan Administrator.**

Miller contends that information about the onset of disability, medical evidence, accident reports, and employment history was not made part of the administrative record.  See Memo. at 6. Miller asserts that the only document identified as the administrative record is the denial letter, which references the Social Security Disability award issue.  See Memo. at 4.  Monumental Life contends that "[t]he evidence presented to and before the Plan [A]dministrator included Miller's medical records and the findings of the SSA as set forth in its decisions on Miller's request for SSD and SSI benefits."  Brief at 2.  Monumental Life argues that "[t]his Court's de novo review can and should include consideration of the evidence before the Plan [A]dministrator and terms of the Policy."  Id. at 3.   Miller admits that he became disabled "due to the combined effects" of these impairments.  Complaint ¶ 8, at 6.

A possible ground for denying Miller's claim for Policy benefits was Miller's disability did not result "solely and directly" from accidental bodily injury sustained "solely through external, violent and accidental means and independently of all other causes," and did not arise "solely out of or in the course of his usual and customary duties of his regular occupation."  Brief at 2. Monumental Life maintains that the evidence to support this reason for denial was before the Plan Administrator at the time it made the decision on Miller's claim for Policy benefits.  See id. at 2-3. Miller contends that information regarding the onset of his disability, his medical evidence, the accident reports, and his employment history were not made part of the administrative record, because the Plan Administrator did not rely on this information to find that Miller failed to establish sole cause, as the Policy requires.  See Memo. at 6 (citing Buzzard v. Holland, 367 F.3d 263, 270-71 (4th Cir. 2004)(reversing trustees' decision to deny benefits for their failure to consider claimant's SSDI award and its evidence that work exacerbated pre-accident medical conditions)).

## PROCEDURAL BACKGROUND

Miller filed this suit on July 16, 2004, in the Second Judicial District, Bernalillo County, New Mexico.  See Complaint at 1.  Miller's action is for group welfare benefits under ERISA.  The only claim that Miller asserts is for the breach of contract.  Miller and his counsel have a standard forty-percent fee plus tax fee agreement.  See Memo. at 16.  Miller requested attorney's fees in his Complaint.  See Complaint at 7.

### 1.    Proceedings in the District Court.

Miller requested attorney's fees in his motion for summary judgment.  See Motion for Summary Judgment at 2, filed April 29, 2005 (Doc. 27)("Motion for Summary Judgment").  Nevertheless, Monumental Life contends that Miller never raised any issue in the summary judgment proceeding of his entitlement to attorney's fees.  See Reply at 5.  Monumental Life asserts that Miller did not raise the issue in his Motion for Summary Judgment nor in his responses to Monumental Life's Motion for Summary Judgment.  See id.  Monumental Life contends that no evidence was produced regarding attorney's fees, and they were never raised or addressed before Miller addressed them in his memorandum on the sole cause issue.  See id.

The Court determined Miller's "Supplemental Security Income Award" was not a "Social Security Disability Award" and thus no CTD Benefits were owing under the Policy.  See Miller v. Monumental Life Ins., 502 F.3d at 1248 (noting that the Court "granted Monumental's motion for summary judgment on the theory that the Plan unambiguously provided that a Title XVI award was not a Social Security Disability Award.").  In his motion for summary judgment, Miller suggested "he is entitled to Continuous Total Disability Benefits under the Policy because of his SSI award." June 2005 at 18.

[S]uch benefit would be reduced 100% by his SSI award and, as a result of any such

payment of Continuous Total Disability, his SSI Award would cease. Once the SSI award ceases, Miller would lose entitlement to Continuous Total Disability Benefits as those benefits end when his "Social Security Disability Award ceases." Policy at 10. Miller's construction is unreasonable and leads to an absurd and unintended result.

June 2005 MOO at 18.

### 2.      **The Tenth Circuit.**

The Tenth Circuit applies federal common law in ERISA cases.  See Miller v. Monumental Life Ins. Co., 502 F.3d at 1249.  The Tenth Circuit held Miller could have "reasonably expected" that his receipt of a "Supplemental Security Income Award" was sufficient to satisfy the Policy requirement of a "Social Security Disability Award" and entitled him to the initial receipt of the monthly benefit.  Id. at 1251.  The Tenth Circuit did not address the result that occurs from such an interpretation.

On appeal, the Tenth Circuit noted that, "[i]n interpreting an ERISA plan, [it] examine[s] the plan documents as a whole and, if ambiguous, construe[s] them as a matter of law."  502 F.3d at 1250 (internal quotations omitted).  The Tenth Circuit held that the ERISA plan at issue is ambiguous.  See 502 F.3d at 1250. The Tenth Circuit decided that "[a]n examination of the programs' respective regulations strengthened [its] conclusion that a reasonable plan participant could reasonably believe that either a Title II or a Title XVI award was a Social Security Disability Award."  502 F.3d at 1251.  "In contrast[, however,] to the Title XVI Decision, the ALJ's findings in the Title II proceeding bore no relation to . . . Miller's ability to engage in productive labor."  502 F.3d at 1251.  Thus, "to be eligible for Title II benefits, an individual must be both insured for disability benefits and disabled within the meaning of the Act."  502 F.3d at 1251.  "Hence, [the Tenth Circuit held] that the Plan is ambiguous because the term Social Security Award is reasonably susceptible to more than one meaning."  Id. at 1253 (internal quotations omitted).

-10-

The Tenth Circuit held that Monumental Life delegated the substantive disability determination to the SSA.  See id. at 1250.  The Tenth Circuit noted: "The Plan mandates that a beneficiary be incapable of engaging in productive labor.  However, it provides no mechanism for assessing his physical condition, other than whether he has received a Social Security Disability Award."  Id. at 1250-51.  Thus, "Monumental [Life]'s delegation suggests that a reasonable person could have expected Mr. Miller's Title XVI award and the SSA's finding of disability to have satisfied the Social Security Award requirement."  Id. at 1251.  The SSA's conclusion that Miller "was unable to perform every duty pertaining to any occupation for which he is or may become qualified by education training or experience . . . seems to satisfy the Plan's requirement that a recipient of Continuous Benefit be unable to perform the physical and mental requirements of any past relevant work."  Id. (internal quotations omitted).

The Tenth Circuit then applied the doctrine of contra proferentem which "construes all ambiguities against the drafter."  Id.  It noted that it has "rejected contra proferentem in cases where the [P]lan [A]dministrator retains discretion and where [it] review[s] only to consider whether the administrator abused discretion."  Id. (citing Kimber v. Thiokol Corp., 196 F.3d 1092, 1100 (10th Cir. 1999)).  The Tenth Circuit nevertheless applied the doctrine in "reviewing an ambiguous ERISA plan de novo."  Miller v. Monumental Life Ins. Co., 502 F.3d at 1253.  The Tenth Circuit "construe[d] the Plan's terms in favor of Mr. Miller and held that his Title XVI award coupled with a finding of disability satisfied the Social Security Disability Award requirement."  Id. at 1255.

The Tenth Circuit remanded the case to the Court to address the issue whether Miller's work-related injury was the "sole cause" of his disability.  Miller v. Monumental Life Ins. Co., 502 F.3d at 1255.  The Tenth Circuit explained:  "We note that Monumental [Life] also moved for summary judgment on the grounds that Mr. Miller's accident was not the 'sole cause' of his disability. . . .

Because the district court did not address this issue, we must remand for further proceedings." Id.

The Court allowed the parties to provide supplemental briefing on this issue, directing

> the parties to rebrief the issue related to the "sole cause" of Plaintiff Rodney Miller's
> disability. Alternatively, the parties may rely on their prior briefing by submitting
> their prior briefs highlighted to show precisely what the Court should consider and
> resolve. The parties should respond to this order within 10 days of the date of the
> order.

Monumental Life submitted additional briefing only on the issue whether the Court can

consider the "sole cause" argument. See Brief at 1. On December 17, 2007, Monumental Life filed

its Supplemental Brief on the issue of sole cause. See id. In its Background portion, Monumental

Life again argues that it is entitled to summary judgment, this time on sole cause. See id.

Monumental Life relies upon the facts and its Briefs filed herein on its Motion for Summary

Judgment on the issue of "sole cause." Id. For the reasons set forth in its Supplemental Brief and

in its earlier briefing, Monumental Life maintains that it is entitled to summary judgment on Miller's

claim for benefits under the Policy. See id.

On January 7, 2008, Miller submitted, pursuant to rule 56(b), his Supplemental

Memorandum of Law in Support of his Motion for Summary Judgment. See Memo. at 1. Miller

incorporates the original Motion for Summary Judgment as if fully set out in his Supplemental

Memorandum. See id. In addition, Miller offers his Supplemental Memorandum in light of the

Tenth Circuit's decision on appeal. See id. Miller, by the motion for summary judgment, responds

to Monumental Life's Supplemental Motion on sole cause. See id.

In its Reply and Motion to Strike, Monumental Life argues that the Court should strike that

portion of Miller's Supplemental Memorandum discussing attorney's fees and deny his request for

attorneys' fees. See Reply at 9.

At the February 8, 2008 hearing, Miller contended that the Tenth Circuit does not favor

remand to Plan Administrators as a remedy.  See Transcript of Hearing at 14:13-15:9 (taken February 8, 2008)(Court & Rawley)("Tr.").[1]  Miller asserted that Hall v. UNUM Life Insurance Co. of America, 300 F.3d 1197 (10th Cir. 2002), supports his contention that the Tenth Circuit disfavors remand as a remedy.  See Tr. at 14:22-24 (Court & Rawley).  Miller argued that a finding of disability by the SSA is a finding of total disability.  See id. at 16:24-17:1 (Rawley).  Miller contended that the burden is on Monumental Life to inform him of the basis for its denial of benefits to him.  See id. at 20:19-21:5 (Rawley).  Miller also asserts that the "sole cause" language is not a policy exclusion.  Id. at 21:7-10 (Rawley).  Miller described the Plan Administrator's review as follows:

| | |
|---|---|
| THE COURT: | How is it normally done?  Does the plan administrator say, give two or three reasons as to why they're denying the policy, that tips the beneficiary off that those are the things in issue and then there's a motion to reconsider or an appeal and that's when you bring in the evidence? |
| MR. RAWLEY: | It's not that difficult or legalistic.  The administrator would send a letter saying it looks as though you failed to meet this requirement.  We'll need to have additional evidence or we'll have to deny you at this time.  I see those sorts of letters all the time.  Frequently they're saying we can't decide this yet because you don't have an opinion from this doctor and we sent out disability statement to a doctor, things like that.  So all the time you're going back and forth making sure that they get what they need in order to have the medical evidence in the record or you're telling them we're waiting for the Social Security decision we'll send that to you.  So there is communication about genuine issues.  But it doesn't and then when there's a final denial, even then you can if they said they'll usually say but if you have additional medical record you know or something to change our opinion you know you can then appeal it.  There's a lot of mechanisms.  You can come in later, too, if you have new evidence.  I mean, the |

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

> whole idea is that they're going to give you your disability if
> you show them you're entitled it's just a matter of getting
> your ducks in a row or getting your evidence in front of them.

Id. at 23:3-24:3 (Court & Rawley).  Miller represented that he did not raise the attorney's fees issue

earlier because it was too early to think he had prevailed.  See id. 24:18-19 (Rawley).  Miller

clarified that "[c]ertainly all I'm asking for is if we prevail that the Court would then allow us to

submit the evidence concerning the hours and the times and all of that."  Id. at 25:1-3 (Rawley).

Miller acknowledged that "it's a legal question as to whether [the Court finds] that we meet the

factors under  Gordon v. United States Steel Corp., 724 F.2d 106, 108 (10th Cir. 1983)."  Tr. at

25:3-5 (Rawley).  Miller conceded that, were Monumental Life to pay him long-term disability

benefits, then his Title 16 benefits would cease. See id. at 27:7-10 (Court & Rawley).  Miller asserts

that he has met his summary-judgment burden with the evidence accepted by the SSA's decision

regarding onset of his disability and the determination of total disability from the date of onset in

the SSA's decision.  See id. at 73:7-11 (Rawley).  Miller contends that he met the burden of proof

at the administrative level when he presented the administrator with his medical records to prove

Miller was disabled.  See id. at 74:11-13 (Rawley).  Miller does not believe that supplementation

of the record is appropriate.  See id. at 74:25-75:1-6 (Court & Rawley).  Miller contends that

Monumental Life has stated that the Plan Administrator had access to the findings of the SSA when

making the decision.  See id. at 75:15-18 (Court & Rawley).

Monumental Life contended that "[i]t doesn't matter what the [Plan] [A]dministrator said,

period.  You're reviewing it de novo . . . you don't have to worry about giving any type of weight

or anything to the evidence."  Id. at 36:4-7 (Hauder).  Monumental Life asserted that it thinks "on

de novo review . . . the Court is allowed to consider this additional ["sole cause"] argument."  Id.

at 37:14-16 (Hauder).  Monumental Life argued that the "sole cause requirement" is separate from

the requirement that Miller be "totally disabled."  Id. at 39:1-4 (Hauder).   Monumental Life

conceded that the Court is stuck with the SSA's determination of the cause of the disability,

including the SSA's determination that the work-related injury included the previous impairments.

See id. at 42:21-43:2 (Court & Hauder).

| MR. HAUDER: | . . . How can we say not say that's what the . . . cause of disability. |
|---|---|
| THE COURT: | I think we're all stuck with that right. |
| MR. HAUDER: | What the cause of the disability is. |
| THE COURT: | Right. |
| MR. HAUDER: | So if all of these things are the cause of the disability then how can the work relate injury be the sole cause if valvular heart disease wasn't . . . a part of the work-related injury. |
| THE COURT: | How do I know that?  From this reward?  I mean I'm not a doctor.  How do I know that the accident didn't cause the [heart] problem?  [Is there a way] in the record to disconnect those?  . . . |
| MR. HAUDER: | You're right. |
| THE COURT: | It's almost silent.  It it doesn't it doesn't tell me anything about what his prior condition was, what the cause of. |
| MR. HAUDER: | So then the proper thing for[] the Court to do is deny the motion for the sole cause issue and have the parties present evidence of that.  Because what you're saying is there's not enough evidence there's not enough evidence for me to move or for you to grant the sole cause issue and that issue is still there before the Court. . . . [B]ut I'm also concern that there's not evidence to grant it for the plaintiff.  The record is almost silent on the sole cause. |

Id.  Monumental Life represented that it had found only Hillstrom v. Kenefick, 484 F.3d 519 (8th

Cir. 2007), and Hall v. UNUM Life Insurance Co. of America, 300 F.3d 1197 (10th Cir. 2002), as

guidance for whether the Court can address an issue that was not decided by the Plan Administrator

and whether the Court may address the administrative record relied upon by the Plan Administrator. See Tr. at 46:15-19 (Hauder).  Monumental Life contended that the phrase "sole cause" is not ambiguous in its Policy.  See id. at 60:12-13 (Hauder).  Monumental Life asserted that the Court should retain the case and decide it, because if the Plan Administrator decides the issue, then its decision will be relitigated in federal court by Monumental Life if the decision is in favor of Miller. See id. at 61:3-7 (Hauder).  Monumental Life argues that the "sole cause" language in the Policy is not an exclusion.   See id. at 61:24-25 (Hauder).  Monumental Life asserted that Miller has the burden of proof to show he is entitled to the benefits he claims under the Policy.  See id. at 62:8-12 (Hauder).  Monumental Life asserted that, "out of fairness . . .  maybe the thing to do is allow a supplementation of the record" considering that Miller did not have any notice that the "sole cause" language in the Policy was going to be an issue, and considering that there is no record whether the Plan Administrator relied on that language to deny benefits.  Id. at 62:19-63:9 (Court & Hauder). Monumental Life conceded that "[t]here's no doubt the [Plan] administrator didn't get to [the sole cause] issue."  Id. at 64:9-11 (Hauder).  Monumental Life admitted that the SSA found Miller disabled, but would not admit that he was totally disabled the way that "totally disabled" is defined under the Policy.  Id. at 65:15-18 (Hauder).[2]

## LAW REGARDING DE NOVO REVIEW OF
## AN ERISA PLAN ADMINISTRATOR'S DECISION

ERISA's goal is "uniform national treatment of pension benefits."  Patterson v. Shumate, 504 U.S. 753, 765 (1992).  Under ERISA, Congress has authorized the courts "to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies

---

[2] Monumental Life asserts that it has obtained surveillance video that undermines Miller's contention that he is, or ever has been, Totally Disabled.  See Monumental's Motion to Remand and Brief ¶ 9, at 4, filed March 2, 2009 (Doc. 62).

set out in [the Act]."  Peterson v. Am. Life & Health Ins. Co., 48 F.3d 404, 411 (9th Cir. 1995).  The

Tenth Circuit applies the federal common law in ERISA cases in recognition of the Congressional

intent that ERISA plans are administered uniformly nationwide.  See Miller v. Monumental Life Ins.

Co., 502 F.3d at 1249.

### 1. __Burden of Proof.__

The burden is on an insurance beneficiary to prove his or her total disability benefits under

an ERISA plan.  See Morales-Alejandro v. Medical Card System, Inc., 486 F.3d 693, 700 (1st Cir.

2007)("A claimant seeking disability benefits bears the burden of providing evidence that he is

disabled within the plan's definition."); Fuja v. Benefit Trust Life Ins. Co., 18 F.3d 1405, 1408 (7th

Cir. 1994)("The trial court determined that because the 'medically necessary' provision of the

insurance contract is set forth in the contract benefits section, as opposed to the 'exclusions' section,

that Fuja bore the burden of establishing her entitlement to the insurance benefits.  We agree with

the trial court's determination on this issue."); Gable v. Sweethart Cup Co. Inc., 35 F.3d 851, 855

(4th Cir. 1994)("Moreover, plaintiffs bear the burden of proving that their employer's ERISA plan

contains a promise to provide vested benefits."); Horton v. Reliance Standard Life Ins. Co., 141 F.3d

1038, 1040 (11th Cir. 1998)(holding that a plaintiff suing under a section allowing a beneficiary to

bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan bears

the burden of proving his entitlement to contractual benefits, but noting that, if the insurer claims

that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove

the exclusion prevents coverage); Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.

1992)(agreeing that it was the beneficiary's burden to show that he was entitled to the benefits under

the terms of his plan)(citing 29 U.S.C. § 1132(a)(1)(B)).

2.      **De Novo Review.**

A de novo review is restricted to the administrative record.  As the Tenth Circuit explained

in Hall v. UNUM Life Insurance Co. of America:

> [T]he best way to implement ERISA's purposes in this context is ordinarily to
> restrict de novo review to the administrative record, but to allow the district court to
> supplement that record when circumstances clearly establish that additional evidence
> is necessary to conduct an adequate de novo review of the benefit decision.

300 F.2d at 1202 (internal quotations omitted).  The Tenth Circuit further "emphasize[d] that it is

the unusual case in which the district court should allow supplementation of the record." Id. at 1203

(citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 (4th Cir. 1993)(en banc)("In

most cases, where additional evidence is not necessary for adequate review of the benefits decision,

the district court should only look at the evidence that was before the [P]lan [A]dministrator or

trustee at the time of the determination.")).  The Tenth Circuit in Hall v. UNUM Life Insurance Co.

listed exceptional circumstances that may warrant the admission of additional evidence: (i) claims

that require consideration of complex medical questions or issues regarding the credibility of

medical experts; (ii) the availability of very limited administrative-review procedures with little or

no evidentiary record; (iii) the necessity of evidence regarding interpretation of the terms of the plan

rather than specific historical facts; (iv) instances where the payor and the administrator are the same

entity and the court is concerned about impartiality; (v) claims that would have been insurance

contract claims before ERISA; and (vi) circumstances in which there is additional evidence that the

claimant could not have presented in the administrative process.  See 300 F.3d at 1203.

In Hall v. UNUM Life Insurance Co., the insurance company's principal argument on appeal

was that "the district court improperly considered evidence outside of the administrative record

relied upon by [the insurance company] when it terminated [the plaintiff]'s benefits." Id. at 1199.

The plaintiff worked as a regional vice president and was a participant in her employer's group long-term disability-insurance plan.  See id.  Under that plan, she was entitled to benefits if she was disabled and "unable to perform the material duties of [her] regular occupation."  Id. (internal quotations omitted).  The plaintiff injured her shoulder in a bicycle accident.  See id.  The insurance company concluded that the plaintiff was disabled and approved the payment of long-term disability benefits to her.  See id.  Approximately a year later, an insurance company employee investigated whether the plaintiff remained disabled.  See id.  The insurance company determined that the plaintiff was no longer disabled "because the restrictions on her physical activities did not prevent her from undertaking work as a vice-president of sales."  Id.  The reevaluation included "surreptitious video surveillance of" the plaintiff.  Id.  The plaintiff sought additional medical treatment because of continuing pain in her shoulder.  See id. at 1200.  The plaintiff informed the insurance company of the additional treatment, when she sought to have her termination of disability payments reconsidered, but the insurance company was not informed of additional surgeries that the plaintiff underwent.  See id.  The plaintiff filed suit against the insurance company, contending that the insurance company had violated ERISA by improperly terminating her disability benefits.  See id.  The district court found that the insurance company breached its duty to the plaintiff under ERISA, and ordered the insurance company to pay pre-judgment interest and attorney's fees to the plaintiff.  See id.  The insurance company appealed, arguing that the district court erred in allowing admission of evidence outside of the administrative record and awarding the plaintiff attorney fees. See id.

The Tenth Circuit explained in Hall v. UNUM Life Insurance Co. that the Tenth Circuit agreed "that the best way to implement ERISA's purposes . . . is ordinarily to restrict de novo review to the administrative record, but to allow the district court to supplement that record when

circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Id. at 1202.  The Tenth Circuit was concerned that, "[u]nless [it] allow[s] employees the possibility of supplementing the record in such circumstances, [it] run[s] the risk of providing employees fewer procedural rights than they had prior to the enactment of ERISA." Id.  The Tenth Circuit noted that a "variety of ERISA cases . . . are brought to the federal courts." Id. (internal quotations omitted).  The Tenth Circuit explained:

> Some of these cases reach the courts with substantial administrative records because of the [P]lan [A]dministrator's detailed procedures and record-keeping for benefit determination decisions. Other cases arrive with very limited records. . . .  ERISA cases also may involve plans in which the payor and administrator are one and the same, or different entities, and they may involve complex issues of medicine, law, and plan interpretation. . . . Given this diversity, providing the district courts with flexibility to admit additional evidence in limited circumstances is appropriate and even necessary in order to address the varied situations in which the administrative record alone may be insufficient to provide proper de novo review.
>
> We emphasize that it is the unusual case in which the district court should allow supplementation of the record. . . .  In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator or trustee at the time of the determination. . . . The party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review.

Id. at 1202-03 (internal citations and quotations omitted).  In considering a motion to supplement the record, the court should "address why the evidence was not submitted to the [P]lan [A]dministrator . . . and should only admit the additional evidence if the party seeking to introduce it can demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made." Id. at 1203 (internal quotations omitted).  On the other hand, if the Plan Administrator did not allow for or permit the introduction of the new evidence, then "its admission may be warranted." Id.

**3.      Coverage Cannot be Created by Waiver or Estoppel.**

Principles of waiver and estoppel cannot be used to modify the express terms of an ERISA plan. See Miller v. Coastal Corp., 978 F.2d 622 (10th Cir. 1993)(stating that "ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estoppel."); Bakery v. Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1027 (4th Cir. 1997)(stating that, "[i]n this circuit, equitable estoppel is not available to modify the written terms of an ERISA plan in the context of a participant's suit for benefits."); Mullins v. Blue Cross and Blue Shield of Va., Inc., 79 F.3d 380, 381 (4th Cir. 1996)(noting "[e]quitable estoppel ... [has] not been permitted to vary the written terms of a plan.")(internal quotations omitted).  This rule is based on ERISA's exacting requirement that the express terms of the ERISA benefit plan be followed.

In Hillstrom v. Kenefick, 484 F.3d 519 (8th Cir. 2007), the United States Court of Appeals for the Eighth Circuit held that, on de novo review of a denial of benefits under an ERISA plan, "'a trial court must consider all of the provisions of the policy in question if these provisions are proffered to the trial court as a reason for denial of coverage,' even where [such provisions were] . . . 'not relied upon by the [P]lan [A]dministrator at the time the denial was made.'"  484 F.3d at 528 (quoting Weber v. St. Louis Univ., 6 F.3d 558, 560 (8th Cir. 1993)).  The Eighth Circuit in Hillstrom v. Kenefick stated: "To do otherwise would permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it."  484 F.3d at 528 (internal quotations omitted).  The Eighth Circuit, in Hillstrom v. Kenefick, noted that "de novo review on an expanded record would produce the same conclusion as de novo review of the administrative record alone."  Hillstrom v. Kenefick, 484 F.3d

at 528 (citing  Conley v. Piney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999), cert. denied, 528 U.S. 1136 (2000)).

The plaintiff in Hillstrom v. Kenefick contended that the insurance company denied his benefits because he was not a "Salaried Employee" under the policy, and because the "Salaried Employee" language was "merely a boilerplate or orphan definition in the policy, and [wa]s not found in the substantive terms of the policy, [the plaintiff] conten[ded] that he was not required to be a Salaried Employee in order to be covered by the policy."  484 F.3d at 527 (internal quotations omitted).  The Eighth Circuit reasoned that "the record reflects that by no means did [the Plan Administrator] rely on that explanation alone." Id.  The Eighth Circuit explained:  "Numerous times over the months that [the plaintiff]'s claim was pending, [Plan Administrator] employees corresponded with [the plaintiff's attorney], seeking additional information under the specified terms of the policy.  Policy definitions were set out, and areas where evidence was lacking were identified."  Id. at 527.  The Eighth Circuit thus "reject[ed] the contention that [the insurance company] [wa]s now advancing post hoc rationales for denying benefits." Id. (internal quotations omitted).  The Eighth Circuit rejected that contention, because

> the letters from [the Plan Administrator] consistently iterated that [the plaintiff] had not shown that he was eligible to receive benefits, had not shown that he was disabled, and had not shown proof of loss as defined by the policy.  Some of those letters requested specific information to verify the source of [the plaintiff]'s income; the amount of earnings received from [the employer], if any; [the plaintiff]'s duties for [the employer]; and the nature and onset of his disability. Nothing of substance has been advanced in the litigation that was not raised in the administrative process. It may be true that [the insurance company] devotes far more diligence in this litigation to challenging the existence, nature, and onset of [the plaintiff]'s asserted disability than [the Plan Administrator] did in its administrative denials.  There is even some indication in the record that the insurer may have acquiesced to the fact of disability, at least on some level.  But ineligibility on this basis was mentioned in the denial letters.

Id. at 527-28.  Thus, the Eighth Circuit decided that, even if the insurance company "were relying

on new rationales that were not part of the administrative record," the plaintiff's claim would fail, because all the rationales, except for the Salaried Employee definition, were based on specific policy requirements.  Id. at 528.

The Tenth Circuit in Jewell v. Life Ins. Co. of North America, 508 F.3d 1303 (10th Cir. 2007), recently confirmed that, in a district court's review of an ERISA Plan Administrator's decision, a party seeking to introduce evidence from outside the administrative record must establish the four elements that the Tenth Circuit set out in Hall v. Union Life Insurance Co. of America, 300 F.3d at 1202.  See Jewell v. Life Ins. Co. of North America, 508 F.3d at 1309.  The Tenth Circuit explained: "The best way for a district court to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record compiled during the claim administration process, instead of taking new evidence, hearing witnesses, and the like." Id. (internal quotations omitted).

> A party seeking to introduce evidence from outside the administrative record bears a significant burden in establishing that he may do so. In particular, [(i)] the evidence must be "necessary to the district court's de novo review;" [(ii)] the party offering the extra-record evidence must "demonstrate that it could not have been submitted to the [P]lan [A]dministrator at the time the challenged decision was made;" [(iii)] the evidence must not be "[c]umulative or repetitive;" nor [(iv)] may it be "evidence that 'is simply better evidence than the claimant mustered for the claim review.' "

Id. (quoting Hall v. Union Life Ins. Co. of Am., 300 F.3d  at 1203 (quoting in turn Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d at 1027))(internal quotation marks omitted).  The Tenth Circuit reiterated that the "exceptional circumstances" listed in Hall v. Union Life Insurance Co. of America "are not exceptions to the Hall rule; they are merely examples of circumstances that might militate in favor of a finding of necessity."  Jewell v. Life Ins. Co. of N. Am., 508 F.3d at 1309.  Thus, "[t]he existence of one or more of these circumstances does not make extra-record evidence automatically admissible, for if it did, then supplementation of the record would not be limited to unusual cases

or extraordinary circumstances." Id. "District courts must conduct analysis case-by-case to determine whether all four prongs of the Hall test are met." Id.

**4.      Remand.**

The Plan Administrator's failure to provide adequate findings or to explain the grounds for denial of benefits "does not mean that the claimant is automatically entitled to benefits because such a holding might provide the claimant with an economic windfall should she be determined not disabled upon a proper reconsideration." Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 776 (7th Cir. 2003)(internal quotations omitted).  Rather, if the Plan Administrator "fail[s] to make adequate findings or to explain adequately the grounds of [its] decision, the proper remedy is to remand the case to the administrator for further findings or explanation." DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1175 (10th Cir. 2006)(internal quotations omitted).

The Tenth Circuit explained in Caldwell v. Life Insurance Co. of North America, 287 F.3d 1276 (10th Cir. 2002), that

> ERISA section 1133(1) requires that a claims administrator provide adequate notice to any participant whose claim has been denied, "setting forth the specific reasons for such denial. . . . The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation. A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious . . .  or the case is so clear cut that it would be unreasonable for the [P]lan [A]dministrator to deny the application for benefits on any ground.

Id. at 1288 (internal quotations and citations omitted).  See Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996)(stating that "[t]he remedy when a court or agency fails to make adequate findings or to explain its grounds adequately is to send the case back to the tribunal for further findings or explanation. . . . This is the appropriate remedy in an ERISA case just as in a conventional

appeal.")(internal citations omitted).

     **5.       Provisions of Coverage and Exclusionary Clauses.**

     "Questions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract interpretation." Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir. 1996).  Applying this principle, the Tenth Circuit in Pirkheim v. First UNUM Life Insurance, 229 F.3d 1008 (10th Cir. 2000), reviewed policy language which stated: "'We agree with the Policyholder to cover each Insured for any loss described in Part I in return for the payment of premiums and subject to the provisions which follow.  The loss must result directly and independently of all other causes from accidental bodily injury which occurs while this policy is in force as to the Insured, herein called 'injury.'" 229 F.3d at 1009 (quoting policy)(emphasis added by Pirkheim v. First UNUM Life Insurance).  In light of the terms "directly" and "independently," the Tenth Circuit in Pirkheim v. First UNUM Life Insurance concluded that the policy it was interpreting was unambiguous and that it imposed two conditions.  "First, the loss must result directly from accidental bodily injury.  Second, the loss must result independently of all other causes."  Id.  The Tenth Circuit therefore agreed with the district court that "the word 'directly' modifies the phrase 'from accidental bodily injury.'  Any other interpretation in this context is contrived."  Id.

     Having interpreted the policy language, the Tenth Circuit in Pirkheim v. First UNUM Life Insurance denied parents accidental death benefits after their four-year old son, who was born with a congenital heart defect, died from pacemaker failure after the batteries inside the pacemaker were depleted.  See id. at 1009.  According to the Tenth Circuit, because the child's "death did not occur independent of all other causes, e.g., his cardiac arrhythmia," one of the policy conditions was not satisfied.  Id. at 1011.  "Accordingly, [the Tenth Circuit] . . . h[e]ld the [P]lan [A]dministrator did

-25-

not err in denying accidental death benefits to [the plaintiffs]."  Id.

In ERISA cases, it is "well-established that the burden is upon the insurer to demonstrate that the insured's claim falls within the terms of an exclusionary clause, and that such clauses are interpreted narrowly."  Frerking v. Blue Cross-Blue Shield of Kan., 760 F.Supp. 877, 811 (D.Kan. 1991).  In Fought v. UNUM Life Insurance Co. of America, 379 F.3d 997 (10th Cir. 2004), the Tenth Circuit dealt with disability insurance policy containing a clause which excluded coverage for preexisting conditions.  The policy had a section heading styled "What disabilities are not covered under your plan?" which stated: "Your plan does not cover any disabilities caused by, contributed to by, or resulting from your . . . pre-existing condition."  379 F.3d at 999.  While the policy at issue in Fought v. UNUM Life Insurance Co. of America did not define "caused by," "contributed to by," or "resulting from," it stated:

> [Y]ou have a pre-existing condition when you apply for coverage when you first become eligible if:
>
> – you received medical treatment, consultation, care or services including diagnostic measure or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage; and
>
> – the disability begins in the first 12 months after your effective date of coverage.

379 F.3d at 999 (internal quotation marks omitted).

The policy holder in Fought v. UNUM Life Insurance Co. of America had undergone an elective coronary artery revascularization surgery during which the surgeon discovered that she had an abnormally narrow and osteoporotic sternum.  See id.  As a result, she required special procedures for treating the surgical wound.  See id.  For the next several months, the policy holder underwent a difficult and debilitating post-operation recovery because of complications with her

surgical wound.  See id. at 999-1000.  The policy holder applied for, and was denied, long-term

disability benefits under her policy on the grounds that a preexisting condition caused her disability.

See id. at 1000.

With those facts in mind, the Tenth Circuit in Fought v. UNUM Life Insurance Co. of

America stated:

> The major difficulty presented by this case is that UNUM's policy excludes coverage
> for disabilities caused by pre-existing conditions, whereas it seeks here to apply its
> policy as if it excludes coverage for disabilities caused by complications from
> surgery for pre-existing conditions. Surgery is not, of course, a pre-existing
> condition, but at most a necessary consequence of a pre-existing condition. In
> essence, therefore, this case becomes a matter of where we draw the line on chains
> of causation.

Id. at 1009.  Facing the complex causation question that the policy's language created, the Tenth

Circuit noted: "[The insurer] seems to suggest that it need not cover anything for which it can

construct a but/for story.  If we were to accept this contention, we would effectively render

meaningless the notion of the pre-existing condition clause by distending the breadth of the

exclusion."  379 F.3d at 1010.  Furthermore, the Tenth Circuit emphasized a regulation from the

Department of Labor, 29 C.F.R. § 2590.701-3(a)(i)(C), to bolster its holding.  See id. at 1010.  The

Tenth Circuit quoted the Practicing Law Institute's guidelines for interpreting 29 C.F.R. § 2590.701-

3(a)(i)(C).  See Fought v. UNUM Life Ins. Co. of Am., 379 F.3d at 1010.  Those guidelines

provided that:

> Thus, before imposing a preexisting condition limitation, plan sponsors must
> carefully evaluate whether a particular condition is "directly attributable" to the
> preexisting condition. Medical conditions which merely "contribute towards"
> accidents or illnesses, but are not "directly attributable" to the preexisting condition
> may not be excluded. This causal connection requirement will undoubtedly open the
> door for arguments that preexisting conditions were not the "proximate cause" of a
> particular injury or sickness -- e.g., treatment of pneumonia for an individual who
> was previously diagnosed with AIDS.

Id. at 1010.  The Tenth Circuit cited as an essential tenet of contract law the notion that exclusions must be read narrowly, and explained that an "exclusion cannot merely require that the pre-existing condition be one in a series of factors that contributes to the disabling condition; the disabling condition must be substantially or directly attributable to the pre-existing condition."  Fought v. UNUM Life Ins. Co. of Am., 379 F.3d at 1010.  Thus, the Tenth Circuit in Fought v. UNUM Life Insurance Co. of America held that "the plan's language . . . [did] not reasonably apply to the attenuated chain of events between the [claimant]'s pre-existing coronary artery disease and her disabling staph infection and that [the insurance company]'s denial of benefits was not supported by substantial evidence."  379 F.3d at 1015.

In Weis v. Accidental Death & Dismemberment Benefit Plan of Kaiser Foundation Health Plan Inc., 442 F.Supp.2d 850 (N.D.Cal. 2006), the plan participant was entitled to coverage for accidental injury to his eye as long as that injury was the predominant and proximate cause of blindness in his eye.  See 442 F.Supp.2d at 852-53.  Although the claimant had congenital cataracts and a thirty-year history of eye problems, the evidence showed that he lost his eyesight after the accident.  See id. at 855-56.  While the district court recognized that his preexisting condition may well have contributed to the extent of his injuries, the district court nevertheless held that he was entitled to coverage as the accident was the proximate cause of his sight loss.  See id. at 857.

In Buzzard v. Holland, 367 F.3d 263 (4th Cir. 2004), an ERISA case, the Fourth Circuit explained:

> We generally review the district court's order granting summary judgment de novo. . . . However, . . . the Supreme Court [has] held that a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . . If the plan confers such authority upon the [P]lan [A]dministrator, a deferential abuse of discretion standard applies to appellate review of the eligibility determination. . . . Because we have previously

held that the 1974 Plan vests the Trustees with full and final authority to determine who is eligible for benefits, our review is limited to ascertaining whether the Trustees abused their discretion.

367 F.3d at 268 (internal quotations and citations omitted).

###   6.   **Attorney's Fees.**

In any action brought by an ERISA plan participant, the court has discretion to award "a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1)(stating that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").  The granting of attorney's fees under ERISA is not to be done as a "matter of course, but is discretionary in nature." Gordon v. United States Steel Corp., 724 F.2d at 108.  There is a general disfavoring of attorney fee awards in ERISA cases.  See San Francisco Culinary, Bartenders and Serv. Employees Welfare Fund v. Lucin, 76 F.3d 295, 298 (9th Cir. 1996)("A denial of attorney's fees in this case would also be consistent with the general disfavoring of attorney fee awards in ERISA cases.").

The Tenth Circuit listed several factors in Gordon v. United States Steel Corp. for deciding if an award of attorney's fees and costs in an ERISA action are appropriate, including: (i) the degree of the opposing parties' culpability or bad faith; (ii) the ability of the opposing parties to personally satisfy an award of attorney's fees; (iii) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (iv) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (v) the relative merits of the parties' position. See Gordon v. United States Steel Corp., 724 F.2d at 109; McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1209 n. 17 (10th Cir. 1992).  In Atwood v. Swire Coca-Cola, 482 F.Supp.2d 1305 (D.

Utah 2007), a court awarded attorneys fees when

> [t]here [wa]s no evidence of bad faith on the part of [the defendant]. But certainly [the defendant]'s culpability has been established, and that culpability outweighs any that might be attributed to [the claimant]. The court also finds that Swire, a large corporation with thousands of employees, has the ability to satisfy an award of attorney's fees and costs. As for the third factor, an award of attorney's fees here would deter other [P]lan [A]dministrators from so cavalierly treating an employee's benefit application. The fourth factor is not applicable in this situation, for [the claimant]'s claim only indirectly benefited participants and beneficiaries (and no significant legal question was presented to the court). Finally, the fifth factor certainly weighs in favor of [the claimant], who ultimately prevailed in this court despite [the defendant]'s arguments. Given the court's analysis of the above cited factors, as well as the court's concern that Swire attempted to place the blame completely on [the claimant], the court finds that [the claimant] is entitled to reasonable attorney's fees and costs.

Id. at 1317-18.  Motions for attorney fees are separate from and collateral to any decision on the merits.  See White v. New Hampshire, 455 U.S. 445, 451-52 (1982)(stating that "[r]egardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits -- an inquiry that cannot even commence until one party has 'prevailed' while discussing attorney's fees under 42 U.S.C. § 1988").

## LAW REGARDING MOTIONS TO STRIKE

A motion to strike is limited to challenges of pleadings, and is not appropriate to question motions or memoranda. See E.E.O.C. v. Roswell Radio, Inc., No. CIV-06-0253 JB/LAM, 2007 WL 2305521 at * 8 (D.N.M. June 12, 2007)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., No. 91-4181, 956 F.2d 278 (Table), 1992 WL 43490, at *2 (10th Cir. March 2, 1992)("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda.")). "Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike."  J. Moore, Moore's Federal Practice §

12.37[2], at 12-128 to 12-129 (3d ed. 2005). The Federal Rules of Civil Procedure define "pleadings" as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, "if the court orders one, a reply to an answer." FED. R. CIV. P. 7(a)(1-7). See Searcy v. Soc. Sec. Admin., 1992 WL 43490, *1, *4 (affirming, "for substantially the same reasons set forth" in the attached Magistrate Judge's Report and Recommendation the recommendation that a motion to strike the defendant's motion to dismiss should be denied because "there is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda")(unpublished); Applied Capital, Inc. v. Gibson, No. Civ. 05-98 JB/ACT, 2007 WL 5685131, *7 & *18 (D.N.M. Sep 27, 2007)(Browning, J.)(citing Searcy v. Soc. Sec. Admin.), and refusing to strike motion to dismiss because "[m]otions to strike are reserved for striking pleadings"); Coleman v. City of Pagedale, No. 4:06-CV-1376 ERW, 2008 WL 161897, *4 (E.D.Mo. Jan. 15, 2008)(holding that a sur-reply and memorandum were not pleadings and could not be attacked with a motion to strike).

The exception to this principle is that a Court may "choose to strike a filing that is not allowed by local rule, such as a surreply filed without leave of court." Superior Prod. P'ship v. Gordon Auto Body Parts Co., No. 06-cv-916, 2008 WL 2230774, at *1 (S.D. Ohio May 28, 2008). See In re Hopkins, No. 98-1186, 162 F.3d 1173, 1998 WL 704710, *3 n.6 (10th Cir. Oct. 5, 1998)(holding that, because party's "briefs were non-complying . . . it was well within the discretion of the district court to strike them")(unpublished); Jones v. United Space Alliance, L.L.C., No. 05-13001, 170 Fed. Appx. 52, 57 (11th Cir. Feb. 3, 2006)(holding that court did not abuse its discretion in striking a motion that violated the district's local rules)(unpublished).

## **ANALYSIS**

A careful review of the sparse administrative record convinces the Court that the most appropriate course of action at this stage is to remand the case to the Plan Administrator for more complete findings. The Plan Administrator gave only one reason for denying benefits, and the Tenth Circuit has found that reason to be erroneous. The parties still dispute, however, whether either Monumental Life or Miller should be entitled to summary judgment on other grounds. The Court does not believe that Monumental Life has waived the sole-cause argument or should be estopped from raising it. While the Court concludes that the sole-cause requirement is not an exclusion, and that it should be interpreted similarly to the "directly" and "independently" language that the Tenth Circuit discussed in Pirkheim v. First Unum Life Ins., the Court believes the administrative record provides insufficient basis for a determination of whether there is a genuine issue of material fact on the sole cause question. The Court also believes that the question whether Miller is Totally Disabled, which represents another requirement for receiving CDB, is open despite some language in the Tenth Circuit opinion in this case suggesting otherwise. The Court will also deny the motion to strike and, at this stage, the request for attorney's fees.

## I.    MONUMENTAL LIFE HAS NOT WAIVED THE SOLE-CAUSE AND TOTAL-DISABILITY ARGUMENTS.

There are two primary reasons why the Court finds that Monumental Life has not waived the ability to argue the sole-cause and Totally Disabled issues. First, the record does not clearly illuminate what was argued to the Plan Administrator. There is no indication, however, that the sole-cause issue ever came up. One of the problems plaguing this case is the paucity of the record. The parties' briefing on the sole-cause issue is replete with arguments about what the administrative record contains, and about what arguments were raised to the Plan Administrator. The parties, however, fail to provide record citations or references to documents or to anything else that could

amount to evidence of what constitutes the administrative record.  The Court suspects that there is no formal record, such as what would be produced in an administrative hearing in front of a governmental agency.  With no definitive record, the Court cannot say that Monumental Life failed to raise anything at the administrative level, such that it should be precluded from doing so now.

Second, the Court agrees with the Eight Circuit's holding in Weber v. St. Louis University, which stated that, when conducting a de novo review of a denial of benefits under an ERISA plan, "a trial court must consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage."  6 F.3d at 560.  The Eighth Circuit in Weber v. St. Louis University stated that such a course of action was proper, "even if those provisions were not 'specified . . . as the basis of denial of coverage.'"  Id. (quoting Farley v. Benefit Trust Life Insurance Co., 979 F.2d 653, 660 (8th Cir. 1992))(ellipsis in Weber v. St. Louis University).

The reasoning that the Eight Circuit marshaled in  Weber v. St. Louis University is persuasive.  The Eighth Circuit explained that to prevent a party from raising other provisions which would preclude coverage would "permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it."  Id. (internal quotation marks omitted).  Without the ERISA framework overlaying this lawsuit, the dispute between Monumental Life and Miller would be a common-law contract case, and the Court's review of the denial benefits would largely consist of interpreting the contract provisions.   Although ERISA alters the setting, it does not compel treatment of the Plan Administrator as analogous to a governmental administrative agency "whose decisions are subject to limited judicial scrutiny."  6 F.3d at 560.  "Nor, in our view, are the materials considered by a plan administrator strictly analogous to a 'record,' in the sense that the courts use that term to

describe the basis for a prior adjudication by a governmental administrative agency." Id.

Miller argues that to allow Monumental Life to argue an "exclusion" for sole cause would be "without an administrative record rendered after notice and an opportunity to be heard." See Memo. at 6. Miller's fear of not having an opportunity to be heard is overwrought, given the protracted nature of this case. Moreover, the Court is able to, and has, allowed the parties to make arguments about the sole-cause issue. The Court's decision to remand this case to the Plan Administrator also alleviates any danger that due process will be denied because the parties will have the opportunity to raise their concerns to the Plan Administrator regarding sole cause. Thus, there will be no unfair surprise wrought upon either party. And, if the Court were to determine that the sole-cause – or the Total-Disability – issue was waived or finally determined in Miller's favor, the Court would be perpetrating a miscarriage of justice. The Court is not aware that there was a formal hearing in the front of the Plan Administrator. Rather, the Plan Administrator received the relevant documentation of Miller's injuries and then issued a letter stating her reasons for rejecting coverage. She did not decide whether Miller was Totally Disabled or whether the work injury was the sole cause of any disability.

To now foreclose argument on those issues based on the fact that the Plan Administrator did not base her decision on them would have the effect of granting a potential windfall to Miller. If the Plan Administrator did not reach the sole-cause issue, but would have otherwise found Miller unable to establish sole cause if not for the finding on SSI benefits, Miller would effectively be able to receive CDB without having to establish that he met all of the requirements for those benefits. In other words, Monumental Life would be forced to pay out benefits to someone not entitled to those benefits merely because the litigation posture of this case brought about the situation where the Tenth Circuit found that, as a matter of law, Miller had established one of the four elements he

needed for his claim to benefits.  The risk of such a windfall underscores the wisdom in the Eight Circuit's opinion in Weber v. St. Louis University mandating that a district court consider all policy provisions which the insurer raises that could potentially disallow benefits.  By considering all pertinent provisions that the Plan Administrator raises, the Court assures that Miller remains liable to show he meets all of the requirements for CDB.

Furthermore, the Court avoids effectively re-writing the Policy, which requires an insured to prove that he meets the criteria for CDB.  See Policy at 10.  The Court is not willing to apply waiver or estoppel under the circumstances of this case to draw a line through the policy language requiring proof or the policy language laying out the elements that the policy holder must prove.

The Court is also reluctant to create a rule that imposes a burden on plan administrators duties that may make this job more complicated and claim resolution more expensive.  Currently, plan administrators make quick decisions, and communication between administration and claimant is often informal.  One issue is often determined, providing quick resolution of most claims.  It does not benefit insurance companies or claimants to require plan administrators to decide every possible issue before there is an appeal, else the parties are estopped for raising any new issues.

To impose such a formal requirement on plan administrators would likely undercut the efficiency that ERISA was designed to guarantee.  The federal appellate courts encourage district courts not to decide questions they do not have to decide, and when new issues are raised on appeal, decline to consider them and remand them to the district court.  The Court should not fashion a rule for plan administrators that is more formal and onerous than what the appellate courts require of district courts.

The Court recognizes that there is an element of burden and that it is perhaps unfair to require Miller to litigate all the way to the Tenth Circuit, to allow Monumental Life to lose on the

one issue on which it provided before the plan administrators, and then allow Monumental Life to return to the Plan Administrator to litigate another issue.  The Court would be reluctant to remand except under extraordinary circumstances.  Those circumstances appear to be present in this case.  The Plan Administrator's record is thin, not clearly revealing what was advanced before her.  Yet to formally grant summary judgment for Miller because the Plan Administrator did not rely on the sole cause could give Miller a windfall.  Fairness dictates that the Plan Administrator explore this issue before the Court tries to determine these issues on the incomplete record it has.

II.     **THE SOLE-CAUSE REQUIREMENT IS NOT AN EXCLUSION.**

One of the primary legal questions that emerges from the parties' briefing is the distinction between an exclusion under a policy and a requirement for coverage.  In some sense, the distinction may appear hollow.  Nevertheless, such a distinction is important to the outcome of this case.  First, the difference between a policy provision and an exclusion weighs upon the determination of who, between the policy-holder and the insurer, has the burden of proving either entitlement or disentitlement to coverage.  Second, the difference impacts which Tenth Circuit case law governs the analysis in this case regarding the interpretation of the sole-cause requirement.

A.     **MILLER HAS THE BURDEN OF PROVING THAT HE QUALIFIES FOR COVERAGE BECAUSE THE SOLE-CAUSE PROVISION IS A REQUIREMENT FOR COVERAGE AND NOT AN EXCLUSION.**

The Tenth Circuit has stated that, under basic contract-interpretation principles, a district court should interpret policy exclusions narrowly.  See Fought v. UNUM Life Ins. Co. of Am., 379 F.3d at 1010.  Moreover, federal courts have held that the insurer has the burden of proving exclusions, such as for preexisting conditions.  See Strickland v. Transamerica Ins., Co., 481 F.2d 138, 149 n.12; Farley v. Benefit Trust Life Ins. Co., 979 F.2d at 658 (agreeing that it was the beneficiary's burden to show that he was entitled to the benefits under the terms of his plan).  In

-36-

contrast, policy exclusions are often characterized as affirmative defenses.  See 5 C. Wright & A.

Miller, FEDERAL PRACTICE AND PROCEDURE 1271, at 588-89 (3d ed. 2004).  The distinction between

an exclusion and a provision of coverage is therefore important because it impacts which party has

the burden of proof.  See Frerking v. Blue Cross-Blue Shield of Kan., 760 F.Supp. 877, 811 (D.Kan.

1991)(finding it "well-established that the burden is upon the insurer to demonstrate that the

insured's claim falls within the terms of an exclusionary clause, and that such clauses are interpreted

narrowly").

        The Policy in this case has separate sections describing the requirements for coverage and

the exclusions.  The Policy contains a separate section entitled **GENERAL EXCLUSIONS AND**

**LIMITATIONS**.   Even though there is obviously some relationship between the sole-cause

requirement that appears in the section defining qualifications for CDB and certain limitations in

the exclusions section, the section defining the requirements states: "We will pay the benefit

described below to an Insured Person when We received due proof " that the requirements, including

sole cause, are met.  Policy at 10 (emphasis added).  In other words, the Policy unambiguously

places the burden on the policy holder seeking benefits to prove the work injury was the sole cause

of the disability.  While the policy holder bears the burden of establishing sole cause and the other

requirements for receipt of benefits, the Tenth Circuit has held that the insurer must prove that

exclusions apply.  The Policy in this case separates coverage requirements from exclusions, and the

Court will respect that division.

        B.    **PIRKHEIM V. FIRST UNUM LIFE INS. APPLIES TO THIS CASE AND
              SUPPORTS A FINDING THAT THE SOLE-CAUSE PROVISION IS
              UNAMBIGUOUS.**

        The parties have cited two Tenth Circuit cases that might control the outcome of this case.

Monumental Life relies heavily on  Pirkheim v. First Unum Life Ins., while Miller argues that

Fought v. UNUM Life Ins. Co. of Am. is more on point.  A careful review of both cases convinces the Court that Monumental Life has applied the correct legal authority to the facts of this case.

Miller seeks to argue out from under Pirkheim v. First Unum Life Ins. by pointing out some ways in which the facts surrounding the disability in that case differ from the facts surrounding the disability in this case.  While the Court does not discount Miller's arguments, the Court believes the the similarities in the language and structure of the policy in Pirkheim v. First Unum Life Ins. to the language and structure of the policy at issue in this case suggest that Pirkheim v. Unum Life Ins. should apply in this case.  An important distinction between Fought v. UNUM Life Ins. Co. of Am. and Pirkheim v. First Unum Life Ins. is that, in Fought v. UNUM Life Ins. Co. of Am., the policy provision in question was an exclusion, while in Pirkheim v. First Unum Life Ins., the Tenth Circuit was dealing with a provision of coverage.  It is that determination that led the Tenth Circuit in Fought v. UNUM Life Ins. Co. of Am. to interpret the policy language in question narrowly.

The policy language in Fought v. UNUM Life Ins. Co. of Am. was also fraught with ambiguities and left key terms undefined.  The policy had a section heading styled "What disabilities are not covered under your plan?" which stated: "Your plan does not cover any disabilities caused by, contributed to by, or resulting from your . . . pre-existing condition."  379 F.3d at 999.  While the policy at issue in Fought v. UNUM Life Insurance Co. of America did not define "caused by," "contributed to by," or "resulting from," it stated:

> [Y]ou have a pre-existing condition when you apply for coverage when you first become eligible if:
>
> – you received medical treatment, consultation, care or services including diagnostic measure or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage; and

– the disability begins in the first 12 months after your effective date of coverage.

379 F.3d at 999 (internal quotation marks omitted).

The terms "caused by," "contributed to," and "resulting from" failed to set the metes and bounds for when the causal relationship between the preexisting condition and the disability became sufficient to compel a denial of coverage.  Thus, given the policy's ambiguity and the necessity of interpreting the exclusionary provision narrowly, the Tenth Circuit in Fought v. UNUM Life Insurance Co. of America found that "[the insurer's] expansive reading of the exclusion may be overly broad: The exclusion cannot merely require that the pre-existing condition be one in a series of factors that contributes to the disabling condition; the disabling condition must be substantially or directly attributable to the pre-existing condition."  Id. at 1011.  Accordingly, "the plan's language . . . [did] not reasonably apply to the attenuated chain of events between the [claimant]'s pre-existing coronary artery disease and her disabling staph infection and that [the insurance company]'s denial of benefits was not supported by substantial evidence."  379 F.3d at 1015.

Because the Tenth Circuit in Pirkheim v. First UNUM Life Insurance was not dealing with an exclusion, and because it was not dealing with ambiguous language, the Tenth Circuit did not have to engage in the complex causation analysis that it did in  Fought v. UNUM Life Insurance Co. of America.  The policy in Pirkheim v. First UNUM Life Insurance stated:  "'We agree with the Policyholder to cover each Insured for any loss described in Part I in return for the payment of premiums and subject to the provisions which follow.  The loss must result directly and independently of all other causes from accidental bodily injury which occurs while this policy is in force as to the Insured, herein called 'injury.'" 229 F.3d at 1009 (quoting policy)(emphasis  added by Pirkheim v. First UNUM Life Insurance).  The requirement that a loss result "directly and independently" was unambiguous in the Tenth Circuit's view.

-39-

The Policy in this case provides, in a fashion similar to the policy in <u>Pirkheim v. First UNUM Life Insurance</u>: "We will pay the benefit described below to an Insured Person when We receive due proof that: (1) he is Totally Disabled; and . . . such Total Disability . . . resulted solely and directly from Injury while insured under the Group Policy . . . ." Policy at 10. The Policy in this case is therefore structured similarly to the policy in <u>Pirkheim v. First UNUM Life Insurance</u>. The Policy in <u>Pirkheim v. First UNUM Life Insurance</u> required the loss to "result directly and independently of all other causes" while the policy in this case requires proof that the injury "resulted solely and directly" from the work injury. Both policies use the word "result" and both use "directly." Moreover, the Court sees very little meaningful distinction, as far as this case is concerned, between "independent of all other causes" and "solely" as those terms are used in the respective policies. "Solely," like "independent of all other causes," seeks to say the same thing: the covered injury must be the only cause. The Tenth Circuit interpreted the "directly and independently" language in such a fashion and upheld a denial of benefits because a child's "death did not occur independent of all other causes, <u>e.g.,</u> his cardiac arrhythmia," and thus one of the policy conditions was not satisfied. <u>Id.</u> at 1011.

Given the Tenth Circuit's analysis in <u>Pirkheim v. First UNUM Life Insurance</u>, the Court must apply similar analysis in this case. Accordingly, the Court finds that the Policy in this case, like the policy at issue in <u>Pirkheim v. First UNUM Life Insurance</u>, requires the policy holder to prove that his disability resulted solely from the work injury. If the work injury alone was not the cause, then Miller is not entitled to coverage.

**III.     THE TENTH CIRCUIT DID NOT DECIDE THAT MILLER HAS ESTABLISHED**

**TOTAL DISABILITY UNDER THE POLICY.**

The Court is not convinced that the Tenth Circuit has decided that Miller has proved Total Disability, which the Policy requires as a condition of coverage. Nevertheless, certain language from the Tenth Circuit's Opinion reversing the Court's Memorandum Opinion and Order in this case gives the Court pause. Specifically, there are various passages in the Tenth Circuit's opinion that might suggest that the Tenth Circuit found that Miller established that, by receiving an SSI benefit based on disability, Miller established that he is Totally Disabled under the Policy. The Tenth Circuit stated:

> It is clear that the Plan's requirement of a Social Security Disability Award serves as a delegation of substantive disability determinations to the SSA. The Plan mandates that a beneficiary be incapable of engaging in productive labor. However, it provides no mechanism for assessing his physical condition, other than whether he has received a Social Security Disability Award.

Miller v. Monumental Life Ins., Co., 502 F.3d at 1251. The Tenth Circuit also explained: "In light of his physical impairments, education, and job skills, the SSA concluded that Mr. Miller was 'unable to perform every duty pertaining to any occupation for which he is or may become qualified by education, training, or experience. . . .' " Id. at 1251 (quoting SSI Decision). The Tenth Circuit noted that "[t]his finding seems to satisfy the Plan's requirement that a recipient of Continuous Benefit be 'unable to perform the physical and mental requirements of any past relevant work.'" Id. (citations omitted).

Although this language troubles the Court, in the end, the Court does not believe the Tenth Circuit decided that it was established that Miller was Totally Disabled. "Seems" is not the word the Tenth Circuit would likely have chosen to demarcate a holding. In identifying the relationship between the Policy's definition of Total Disability and the requirement for an award of Social Security Disability benefits, the Tenth Circuit intended to illustrate that a reasonable policy holder

-41-

would equate an SSI benefit with an SSD benefit.  It is for that reason that the Tenth Circuit pointed out that the SSA's finding seems to satisfy the disability requirement.

The Court does not believe the Tenth Circuit meant to further hold that the disability prong was, in fact, met.  Accordingly, whether the Total Disability requirement has been met remains an open question that will have to be further developed with the Plan Administrator.   Moreover, the Policy specifies that the policy holder must prove that the Total Disability "began within the Disability Commencement Period," "continued without interruption for at least the Waiting Period," and "is reasonably expected to continue without interruption until the Insured Person dies."  Policy at 10.

Moreover, the Court did not remand the case to the Court with instructions to enter judgment for Miller on the sole-cause issue or on any other basis.  Instead, the Tenth Circuit remanded the case to the Court to address the issue whether Miller's work-related injury was the "sole cause" of his disability.  Miller v. Monumental Life Ins. Co., 502 F.3d at 1255.  The Tenth Circuit explained: "We note that Monumental [Life] also moved for summary judgment on the grounds that Mr. Miller's accident was not the 'sole cause' of his disability. . . .  Because the district court did not address this issue, we must remand for further proceedings."  Id.  While the Court has been careful to read and re-read multiple times the Tenth Circuit's opinion, and wants very much to follow its directions, and is troubled by certain language in the opinion, the Court concludes that the Tenth Circuit did not decide the issue of Total Disability and remanded that issue to this Court to address it further.

Miller cites various cases from other jurisdiction to support his argument that the sole-cause language in the Policy should be interpreted narrowly to allow for coverage where the injury is a proximate or substantial cause of the disability.  In other words, Miller wishes the Court to ignore

the actual language of the Policy and construe it in his favor.  The authorities Miller cites do not

persuade the Court to do so.

Miller cites, for example, Robertson v. Connors, 848 F.2d 472 (4th Cir. 1988), a case brought

under the United Mine Workers of America Pension Fund in which the United States Court of

Appeals for the Fourth Circuit interpreted the phrase "as a result of a mine accident" to require that

the claimant show proximate cause.  See id. at 475.  The Fourth Circuit had to determine whether

the Trustee's finding that a mine accident was not substantially responsible for the claimant's

disability was arbitrary and capricious.  See id.  The Fourth Circuit stated:

> The only reasonable interpretation of the requirement that total disability be "the
> result of a mine accident," therefore, is that it requires total disability to have been
> proximately caused by the mine accident. That is, if the plaintiff was injured in a
> mine accident and that injury, whether in combination with a previous or subsequent
> condition, is substantially responsible for plaintiff's inability to perform his job and
> for whatever medical and vocational reasons he is unable to perform an alternative
> job, then his total disability results from a mine accident.

Id. at 475 (quoting Horn v. Mullins, 498 F.Supp. 1197, 1200 (W.D.Va. 1980), aff'd, 650 F.2d 35

(4th Cir. 1981)).  Underpinning the Fourth Circuit's reasoning was another opinion springing out

of a claim of benefits under the United Mine Workers of America Pension Fund from the Western

District of Virginia, in which the district court had explained:

> [T]he determination of whether an individual is disabled necessarily involves
> vocational as well as medical considerations. A back injury which precludes an
> individual from performing his usual job would rarely prevent performance of light
> and sedentary activities. However, whether an individual with such an injury could
> meet the vocational demands of light or sedentary employment is an obviously
> different matter. The test for disability is a functional one, and a requirement that a
> mine accident injury alone preclude alternative work fails to take that fact into
> account. Given such a requirement, a plaintiff could establish that a mine accident
> injury is substantially responsible for preventing him from returning to his usual job,
> but, because other medical conditions or vocational factors preclude alternative
> work, it could be found that his total disability did not result from a mine accident.
> The only reasonable interpretation of the requirement that total disability be "the
> result of a mine accident," therefore, is that it requires total disability to have been

-43-

proximately caused by the mine accident. That is, if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical and vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.

Horn v. Mullins, 498 F.Supp. at 1200.  Such an interpretation of the language at issue in cases brought under the United Mine Workers of America Pension Fund might make sense.  The language setting forth the requirement that the disability "result" from the mine accident did not contain further qualifications, such as "solely," "directly," or "independently," like the language at issue in this case.  In light of the fact that a determination of Total Disability in this case also turns on both vocational and medical consideration, the Court can imagine the Tenth Circuit ruling in a similar fashion as the Fourth Circuit or the Western District of Virginia when faced with the same or similar language.  Regardless, the Tenth Circuit has already interpreted a clause like the one in this case, which contained the limiters "directly" and "independently."  Pirkheim v. First UNUM Life Insurance, 229 F.3d at 1009.  The Tenth Circuit read those two limiting phrases to impose two conditions: "First, the loss must result directly from accidental bodily injury.  Second, the loss must result independently of all other causes."  Id.  It is therefore likely that the Tenth Circuit would read the language of the Policy at issue in this case, which uses the words "solely" and "directly," to similarly impose two requirements such as those that the policy discussed in Pirkheim v. First UNUM Life Insurance imposed.

Miller also cites Weis v. Accidental Death & Dismemberment Ben. Plan, 442 F. Supp. 2d 850 (N.D. Cal. 2006), in which a federal magistrate judge interpreted a policy that covered "bodily injury caused by an accident . . . and resulting directly and independently of all other causes" as being satisfied by a showing that the accident proximately caused the injury.  442 F. Supp. 2d at 851. The magistrate judge applied the doctrine of reasonable expectations, which the United States Court

of Appeals for the Ninth Circuit had adopted as part of the federal common law.  See id.  Employing

the doctrine of reasonable expectations, the magistrate judge explained that claimant had only

received a copy of the Summary Plan Description and not the policy itself.  See id.  The Summary

Plan Description stated: "'Accidental Death and Dismemberment benefits are not payable for death

and dismemberment due to: most natural illnesses or diseases.'"   Weis v. Accidental Death &

Dismemberment Ben. Plan, 442 F. Supp. 2d at 851 (quoting Summary Plan Description).  Because

the claimant did not receive a copy of the policy and only had the Summary Plan Description, the

magistrate judge stated: "The [Summary Plan Description]'s more generous language could

reasonably create different expectations than the more onerous language of the Policy. In such cases,

the language most favorable to Plaintiff controls . . . ."   Weis v. Accidental Death &

Dismemberment Ben. Plan, 442 F. Supp. at 853.  The magistrate judge also explained:

> Any burden of uncertainty created by careless or inaccurate drafting of the summary
> must be placed on those who do the drafting, and who are most able to bear that
> burden, and not on the individual employee, who is powerless to affect the drafting
> of the summary or the policy and ill equipped to bear the financial hardship that
> might result from a misleading or confusing document.  Accuracy is not a lot to ask.

Weis v. Accidental Death & Dismemberment Ben. Plan, 442 F. Supp. at 853 (quoting Bergt v. Ret.

Plan For Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1145 (9th Cir. 2002)).

Weis v. Accidental Death & Dismemberment Ben. Plan does not counsel the outcome of this

case.  While the policy at issue in that case was similar to the Policy in this case, the magistrate

judge did not apply the Policy language strictly.  Rather, a set of circumstances not present here –

i.e., the policy holder was presented with a summary document that contained language that was

more permissive than the actual policy language – led the magistrate judge to apply the doctrine of

reasonable expectations.  The Court agrees with the magistrate judge in Weis v. Accidental Death

& Dismemberment Ben. Plan that there is something wrong about an insurance company

representing coverage to be more permissive than it really is, and then using the more onerous language found in the policy to deny a claim for benefits. This case does not raise such a danger. Instead, there is no dispute that Miller had the Policy and could read its terms, and that Monumental Life has sought to apply the policy language that Miller has at his disposal. There is therefore no reason to apply the doctrine of reasonable expectations in this case.

Finally, Miller argues that the Tenth Circuit's opinion in this case requires that the district court apply federal common law to interpret the Policy and that, under federal common law, the Court should not read the "sole" and "directly" language in a literal fashion. The Court realizes that, applying the federal common law, the Tenth Circuit held that ambiguities should be construed against the drafter. While Miller contends that the "sole-cause" language is ambiguous, the Court does not believe the language is ambiguous, given the Tenth Circuit's treatment of nearly identical language in Pirkheim v. First UNUM Life Insurance.

## IV. REMAND IS THE APPROPRIATE REMEDY IN THIS CASE, GIVEN THE LACK OF CLARITY IN THE RECORD.

Both parties in this case argue that they are entitled to summary judgment on sole cause. Both parties' arguments, however, lack citation to evidence that the Court can rely in determining whether either party or none is entitled to summary judgment. The Plan Administrator denied coverage without mentioning sole-cause. Moreover, there is little evidence on what the Plan Administrator relied to reach her conclusion to deny benefits. Under these circumstances, even in light of the Court's interpretation of the sole-cause language of the Policy, the most appropriate course of action is to remand to the Plan Administrator so that she can further develop her ruling, and so that the parties can create a record upon which the Plan Administrator and any reviewing court can properly rule.

-46-

**A.      THE PLAN ADMINISTRATOR DID NOT EXPLICITLY RELY UPON THE "SOLE CAUSE" LANGUAGE IN THE POLICY TO DENY MILLER BENEFITS.**

The Plan Administrator's decision contains one hundred and one words, excluding salutations and other formalities.  In its entirety, the body of the letter setting forth the decision reads:

> Based on a review of your policy terms it does not appear that you are eligible for continuous total disability.
>
> According to the terms of the policy in order to be eligible for continuous total disability you must be unable to engage in any gainful employment for which you can be reasonably trained for [sic].
>
> You must be awarded a social security disability award for injuries sustained from this accident of 9-15-97.  The information you have provided to us from the social security office is for supplemental security income and not a social security disability award.  Therefore, no benefits are available.

Plan Administrator's Letter at 1.  Two things are evident from the letter.  First, the Plan Administrator denied for one reason: the SSI benefit did not qualify as a social-security disability award.  See id.  Second, the Plan Administrator reviewed "information" Miller provided from the Social-Security office.  Id.  The Court assumes that the Plan Administrator was referring to the SSI Decision, which was in Miller's favor.  If that is the case, then the Court can likely assume that the Plan Administrator had the SSI Decision and that the SSI Decision therefore represents part of the record.

The Plan Administrator's letter is silent regarding other bases for denial of coverage.  One possible reason for this silence is that the Plan Administrator, having decided a dispositive issue, considered it unnecessary to proceed to determining other issues, such as causation and Total Disability.  The Court at least cannot infer from the Plan Administrator's letter that she had a position regarding issues other than the character of SSI benefits.  Moreover, the fact that the parties

did not make a record on this issues for the administrator is not surprising.  The Plan Administrator received whatever documentation Miller was required to provide, and the Plan Administrator then applied her understanding of the policy.  The process was not like an administrative adversarial proceeding.

> **B.**     **THE CASE LAW CONVINCES THE COURT THAT A REMAND WOULD BE MORE APPROPRIATE THAN SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD.**

Under the circumstances of this case, where the record is inadequate for appropriate judicial decision-making, the Tenth Circuit recognizes two solutions: a court may allow the parties to supplement the record or the court may remand.  The case law suggests that remand is the most appropriate course of action in this case.  The Court will therefore remand the case to the Plan Administrator.

The Tenth Circuit has explained that when the Plan Administrator "fail[s] to make adequate findings or to explain adequately the grounds of [its] decision, the proper remedy is to remand the case to the administrator for further findings or explanation."  DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1175 (10th Cir. 2006)(internal quotations omitted).

The Tenth Circuit reasoned in Caldwell v. Life Insurance Co. of North America that

> ERISA section 1133(1) requires that a claims administrator provide adequate notice to any participant whose claim has been denied, "setting forth the specific reasons for such denial. . . .  The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation. A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious . . .  or the case is so clear cut that it would be unreasonable for the [P]lan [A]dministrator to deny the application for benefits on any ground.

287 F.3d at 1288 (internal quotations and citations omitted).  See Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996)(stating that "[t]he remedy when a court or agency fails to make adequate

findings or to explain its grounds adequately is to send the case back to the tribunal for further findings or explanation. . . . This is the appropriate remedy in an ERISA case just as in a conventional appeal.")(internal citations omitted).

On the other hand, the Tenth Circuit has also noted that, at times, it is appropriate for the district court to allow the parties to supplement the record before making a ruling.  In a district court's review of an ERISA Plan Administrator's decision, a party seeking to introduce evidence from outside the administrative record must establish the four elements that the Tenth Circuit set out in Hall v. Union Life Insurance Co. of America, 300 F.3d at 1202.  See Jewell v. Life Ins. Co. of North America, 508 F.3d at 1309.  The Tenth Circuit explained: "[T]he best way for a district court to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record compiled during the claim administration process, instead of taking new evidence, hearing witnesses, and the like." See Jewell v. Life Ins. Co. of North America, 508 F.3d at 1309.  (internal quotations omitted).

> A party seeking to introduce evidence from outside the administrative record bears a significant burden in establishing that he may do so. In particular, [(i)] the evidence must be "necessary to the district court's de novo review;" [(ii)] the party offering the extra-record evidence must "demonstrate that it could not have been submitted to the [P]lan [A]dministrator at the time the challenged decision was made;" [(iii)] the evidence must not be "[c]umulative or repetitive;" nor [(iv)] may it be "evidence that 'is simply better evidence than the claimant mustered for the claim review.' "

Id. (quoting Hall v. Union Life Ins. Co. of Am., 300 F.3d  at 1203 (quoting in turn Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d at 1027)).  The Tenth Circuit reiterated that the "exceptional circumstances" listed in Hall v. Union Life Insurance Co. of America "are not exceptions to the Hall rule; they are merely examples of circumstances that might militate in favor of a finding of necessity."  Jewell v. Life Ins. Co. of N. Am., 508 F.3d at 1309.  Thus, "[t]he existence of one or more of these circumstances does not make extra-record evidence automatically admissible, for if

it did, then supplementation of the record would not be limited to unusual cases or extraordinary circumstances." Id. "District courts must conduct analysis case-by-case to determine whether all four prongs of the Hall test are met." Id.

Even though it is therefore clear that the Tenth Circuit recommends remand to the Plan Administrator under certain circumstances and allows supplementation of the record in the district court under limited circumstances, it is not clear how a district court should choose between those two courses of action. The practical differences between remand and supplementation, however, convince the Court that this case presents appropriate circumstances for a remand.

When it chose to grant district courts the flexibility to allow parties to supplement the Plan Administrator's record, the Tenth Circuit was primarily concerned with balancing competing risks. On the one hand, if district courts were promiscuous about allowing parties to supplement the record, the district courts might begin playing the role of substitute plan administrators and frustrate the speedy administration of justice. See Hall v. Union Life Insurance Co. of America 300 F.3d at 1201. On the other hand, it might be unfair to claimants because, before ERISA was enacted, claimants would have been able to supplement the record, and a prohibition on supplementing the record under ERISA would afford claimants less protection than they had before ERISA. Such a result would run counter to ERISA's purposes. See Hall v. Union Life Insurance Co. of America 300 F.3d at 1201.

The Tenth Circuit carved out a middle ground between the two extremes and set forth the circumstances where supplementing the record would be appropriate. Whether to remand, however, is based on a different set of considerations. One major risk of a court refusing to remand a case to the Plan Administrator where the record is inadequate is that a claimant could face unfair surprise if the court ruled that the claimant was not entitled to coverage for a reason that the Plan

Administrator did not discuss.  On the flip side, a Plan Administrator's failure to provide adequate findings or to explain the grounds for denial of benefits "does not mean that the claimant is automatically entitled to benefits because such a holding might provide the claimant with an economic windfall should she be determined not disabled upon a proper reconsideration." Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d at 776.  In other words, if the Court refused to remand and insisted on deciding on an incomplete or unclear record in favor of the claimant, the claimant might receive a windfall because he will receive benefits without having to fully prove he is entitled to those benefits.

Remand is therefore based mainly on the inadequacy or lack of clarity in the administrative record.  A district court is not in a good position to conduct a review of a record if that record is not fully developed and before the court.  This case fully implicates such concerns to a greater degree than the concerns that would counsel in favor of retaining the case and allowing the parties to supplement the record.  The Court is concerned about ruling on an issue such as sole cause or Total Disability without first seeing what the Plan Administrator does with those issues.  Each issue implicates highly specialized determinations based on medical evaluations which the Plan Administrator presumably faces on a routine basis.

At the hearing, Miller discussed the process that the Plan Administrator follows.  The Court believes that the process illustrates why it is appropriate to send this case back.  According to Miller's representations:

> The administrator would send a letter saying it looks as though you failed to meet this requirement.  We'll need to have additional evidence or we'll have to deny you at this time.  I see those sorts of letters all the time.  Frequently they're saying we can't decide this yet because you don't have an opinion from this doctor and we sent out disability statement to a doctor, things like that.  So all the time you're going back and forth making sure that they get what they need in order to have the medical evidence in the record or you're telling them we're waiting for the Social Security

> decision we'll send that to you. So there is communication about genuine issues.
> But it doesn't and then when there's a final denial, even then you can if they said
> they'll usually say but if you have additional medical record you know or something
> to change our opinion you know you can then appeal it. There's a lot of
> mechanisms. You can come in later, too, if you have new evidence. I mean, the
> whole idea is that they're going to give you your disability if you show them you're
> entitled it's just a matter of getting your ducks in a row or getting your evidence in
> front of them.

Tr. at 23:3-24:3 (Court & Rawley). To the extent that Miller has accurately portrayed the Plan

Administrator's review process, it is evident that the Plan Administrator can, if necessary, request

further documentation from a claimant, contact the doctors whom the claimant has used, and

reconsider her determination if the claimant brings back further evidence to establish entitlement.

Thus, it is possible to develop a record in the administrative process, and it is possible to ascertain

the basis upon which a Plan Administrator makes her decision. The problem in this case is that the

Plan Administrator gave only one basis for denying benefits and was silent on the other elements

of the Policy. The record does not reflect that the Plan Administrator determined whether the work

injury was the sole cause of the disability or whether she believed evidence on that element was

lacking. Until the Plan Administrator clarifies at what evidence it looked on the sole cause and other

elements, the Court cannot review what the Plan Administrator did in a meaningful way.

Supplementing the recording is less useful than remand here because, even if the Court

allows supplementation of the record, the Court would be putting itself in the shoes of the Plan

Administrator and attempting to review this claim without the Plan Administrator having the

opportunity to apply her expertise and make a determination on issues about which she was silent

in the earlier letter. It is therefore more appropriate to allow the Plan Administrator to pass on these

issues first.

## V.	THE COURT WILL DENY MONUMENTAL LIFE'S MOTION TO STRIKE.

Monumental Life's attempt to argue that the Court should strike Miller's motion for attorney's fees lacks merit.  A motion to strike is limited to challenges of pleadings, and is not appropriate against motions or memoranda.   See E.E.O.C. v. Roswell Radio, Inc., 2007 WL 2305521 at * 8.  "[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."  Searcy v. Soc. Sec. Admin., 1992 WL 43490, at *2.  Thus, the Court will deny Monumental Life's motion to strike Miller's supplemental brief.

## VI.   MILLER IS NOT ENTITLED TO ATTORNEY'S FEES.

The Court will deny Miller's request for attorney's fees.  In an ERISA case, the court has discretion to award "a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1)(stating that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").  The granting of attorney's fees under ERISA is not to be done as a "matter of course, but is discretionary in nature."  Gordon v. United States Steel Corp., 724 F.2d at 108.  There is a general disfavoring of attorney fee awards in ERISA cases.  See San Francisco Culinary, Bartenders and Serv. Employees Welfare Fund v. Lucin, 76 F.3d at 298("A denial of attorney's fees in this case would also be consistent with the general disfavoring of attorney fee awards in ERISA cases.").

The Tenth Circuit listed several factors in Gordon v. United States Steel Corp. for deciding if an award of attorney's fees and costs in an ERISA action are appropriate, including: (i) the degree of the opposing parties' culpability or bad faith; (ii) the ability of the opposing parties to personally satisfy an award of attorney's fees; (iii) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (iv) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve

-53-

a significant legal question regarding ERISA; and (v) the relative merits of the parties' position. See Gordon v. United States Steel Corp., 724 F.2d at 109; McGee v. Equicor-Equitable HCA Corp., 953 F.2d at 1209 n.17.

Here, the Court cannot say that Monumental Life engaged in any culpable or bad-faith conduct. While the Tenth Circuit has decided Monumental Life's interpretation of its policy was erroneous, there is no indication that Monumental Life came to its conclusion in a bad faith way. Monumental Life's problem was that it wrote an ambiguous provision and did not express its intent clearly– not that Monumental Life acted in bad faith.

The second Gordon factor also does not support an award of fees. The record is silent about Monumental Life's ability to satisfy an award of attorney's fees, but the Court assumes that Monument Life could satisfy any award. Nevertheless, that factor, without more, does not suggest that the Court should, at this time, shift Miller's expenses to Monumental Life.

It is unlikely that shifting Miller's fees to Monumental Life will deter others from acting like Monumental Life under similar circumstances. The dispute between Monumental Life and Miller was a genuine one, and it is not settled. A grant of fees in this case will probably not influence insurance companies one way or another when unresolved legal issues separate them.

The legal issue here appears to be sui generis. It has apparently not arisen before at Monumental Life. Monumental Life, and perhaps other insurance companies, can now simply draft around the issue if they wish. The Tenth Circuit's decision is unlikely to benefit more participants than Miller. While it is true that the Tenth Circuit's opinion is a published opinion, and established for the first time in the Tenth Circuit that courts should apply *contra preferentem* to construe ambiguous language in ERISA contracts, other circuits have so held, and the case is largely an application of established law to the facts of this case.

The reality is that the parties – both Miller and Monumental Life – urged the Court to apply state law at the district court level, and then, on appeal, Miller changed his position and argued that federal common-law applied.  If Miller had argued that federal law applied in the district court, he might had prevailed in the district court on the legal issue that he applied to the Tenth Circuit.

In any case, while Miller has prevailed on one issue at this stage, he has not yet prevailed in the case.  Miller may be entitled to fees and costs at a later point.  At this stage, with the background that fees are disfavored in ERISA cases, the Court believes that it should not, under the Gordon factors, award Miller his fees and costs.

At the hearing, Miller explained: "Certainly all I'm asking for is if we prevail that the Court would then allow us to submit the evidence concerning the hours and the times and all of that."  Id. at 25:1-3 (Rawley).  The Court does not see a problem with Miller having asked for attorneys fees in the manner that he did, and the Court has held that it will not strike his request for attorney's fees.  At this stage, however, an award of attorney's fees in not appropriate.  There is still more to be done in this case.  The case will at least be remanded to the Plan Administrator for further review.  If the parties cannot either accept the Plan Administrator's finding or settle this case, it is likely the case will return to the district court to review the Plan Administrator's determination.  In sum, it is too early in the game to start talking about attorney's fees.

**IT IS ORDERED** that this case is remanded to the Plan Administrator for further proceeding consistent with this Memorandum Opinion and Order.  Monumental Life Insurance Company's Motion to Strike Plaintiff's Supplemental Brief is denied.   The Plaintiff's request for an award of attorney's fees, interest, and costs is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James Rawley
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Bruce S. McDonald
Lucinda Siembieda
Law Offices of Bruce S. McDonald
Albuquerque, New Mexico

-- and --

Bernie E. Hauder
Adkerson, Hauder & Bezney P.C.
Dallas, Texas

     *Attorneys for the Defendant*